MISSOURI E. DOWNING, Appellee, *vs.* JAMES H. GRIGSBY *et al.* Appellants.

*Opinion filed October 25, 1911—Petition stricken Dec. 6, 1911.*

1. WILLS—*the intention which must control is the intention expressed.* The intention of the testator which must control in the construction of his will is the intention expressed by the words used and not an intention which it may be inferred from circumstances he might have had but failed to express.

2. SAME—*the word "estate" is not equivalent to "heirs."* The word "estate" is not equivalent to the word "heirs," as the estate is the subject matter with which the testator deals when making a will whereas the heirs are the possible distributees.

3. SAME—*ordinary meaning of the expression "revert to my estate."* The ordinary meaning of the expression "revert to my es-

tate" is, "return to the aggregate of all the property which I may leave at my death."

4. SAME—*wills speak from the death of testator.* Wills speak from the death of the testator, and, unless controlled by a manifest intention to the contrary, the estate devised will be construed as vesting at that time.

5. SAME—*when widow takes both a life estate and a share of the fee.* Where a will gives the homestead premises to the widow for life and "at her death to revert to my estate," and by a subsequent clause gives the widow one-half of the residue of the testator's estate without having made any disposition of the fee of the homestead premises, such fee passes under the residuary clause and the widow is entitled to one-half thereof in addition to her life estate, there being nothing in the will showing a contrary intention.

6. PARTITION—*when partition may be had during existence of life estate.* Where the widow takes a life estate in the homestead premises under one clause of the will and one-half the fee thereof under the residuary clause, she is entitled to have partition during the existence of her life estate if there is nothing in the will showing the testator's purpose was to postpone the division of the estate until the death of the widow.

7. ESTOPPEL—*when widow is not estopped to claim as residuary devisee.* A widow is not estopped to claim, as residuary devisee, a share of the fee in premises in which she was given a life estate under the will, where she has not received anything inconsistent with such claim nor done or omitted to do anything upon which any of the interested parties have relied or could have relied to their disadvantage.

HAND and CARTWRIGHT, JJ., dissenting.

APPEAL from the Circuit Court of Pike county; the Hon. GUY R. WILLIAMS, Judge, presiding.

JEFFERSON ORR, A. G. CRAWFORD, EDWARD DOOCY, and ANDERSON & MATTHEWS, for appellants:

The words "at her death to revert to my estate" should be read "shall go back to my estate," as it would be impossible for the estate to revert to persons who have never had any interest therein; and the words "my estate" would not refer to the complainant, because if it did, the effect would be to say that the testator intended to give her an estate for

life, and then, after her death, to revert back and give her one-half of the fee,—a thing which would be impossible. *Johnson* v. *Askey,* 190 Ill. 63; *Fargo* v. *Miller,* 150 Mass. 285; *Bailey* v. *Bailey,* 25 Mich. 185; *Rusing* v. *Rusing,* 25 Ind. 63; *Abbott* v. *Bradstreet,* 3 Allen, 587.

To revert back "to my estate" or "to my heirs" means simply to go back to the testator's estate. *Beatty* v. *Trustees,* 39 N. J. Eq. 463; 2 Blackstone's Com. 175.

The naming of a person as life tenant, the remainder at the death of the life tenant to go "as though I had died intestate," or "to such persons as would be entitled to the same by the statute of distribution," or "revert to my estate," excludes the life tenant from taking any part in the fee, even where the life tenant is an heir. *Heard* v. *Read,* 169 Mass. 216; *Briden* v. *Hewlitt,* 2 M. & K. 90; *Butler* v. *Bushnell,* 3 id. 232; *Jones* v. *Colbeck,* 8 Ves. Jr. 38; *Long* v. *Blackall,* 3 Ves. 486; *Abbott* v. *Bradstreet,* 3 Allen, 587.

The rule at the common law was, that a devise of real property which was only partial and not complete, or which lapsed or was void, passed to the heir and not under the residuary clause of the will, the law favoring the heir. As to personal property the rule is different, personal property passing under the residuary clause. This rule of the common law is in force in this State. *Crerar* v. *Williams;* 145 Ill. 641; *English* v. *Cooper,* 183 id. 208; *Crawford* v. *Cemetery Ass'n,* 218 id. 399; *Mills* v. *Newberry,* 112 id. 123; *Missionary Society* v. *Mead,* 131 id. 338; *In re Logan's Estate,* 131 N. Y. 456; *Magnuson* v. *Magnuson,* 197 Ill. 499.

Equity will not award partition at the suit of one in violation of his own agreement or in violation of the conditions or restrictions imposed upon the estate by one through whom he claims. 21 Am. & Eng. Ency. of Law, (2d ed.) 1158; *Dee* v. *Dee,* 212 Ill. 354; *Ingraham* v. *Mariner,* 194 id. 269; *Hill* v. *Reno,* 112 id. 154.

J. J. NEIGER, for appellee:

A reversion is when the residue of the estate doth continue in him that made the particular estate or where the particular estate is derived out of his estate. Coke's Litt. chap. 2, sec. 19.

A disposition by a general residuary clause of "all the rest and residue of my estate" carries with it an undisposed of reversion of real estate. 1 Jarman on Wills, 727.

Standing alone, without any qualification or restriction, the word "estate" will include all kinds of property, real, personal and mixed. *Cook* v. *Lanning,* 40 N. J. Eq. 369; *Richards* v. *Miller,* 62 Ill. 420.

A devise to a person for life and at his death "to revert to my estate" is a devise of an estate for life, merely, and the reversion remains in the grantor unless there is a residuary clause in the will. *Akers* v. *Clark,* 184 Ill. 138; *Wixon* v. *Watson,* 214 id. 158; *Thomas* v. *Thomas,* 229 id. 278; *Armstrong* v. *Barber,* 239 id. 402; *Conner* v. *Gardner,* 230 id. 262; *Ingraham* v. *Ingraham,* 169 id. 442; *Thomas* v. *Miller,* 161 id. 70; *Kellett* v. *Shepard,* 139 id. 442; *Stisser* v. *Stisser,* 235 id. 210; *Biggerstaff* v. *Van-Pelt,* 207 id. 618.

Mr. JUSTICE DUNN delivered the opinion of the court:

Strother Grigsby died in 1897, leaving the appellee, his widow, and his four children by a former wife, his heirs. He left a will, by the second clause of which he devised to his widow a life estate in lot 7, block 23, in the town of Pittsfield,—their homestead. The appellee filed a bill for the partition of these premises, subject to such life estate, claiming one-half of the fee in remainder by virtue of the fifth clause of the will. The second and fifth clauses are as follows:

"*Second*—I will and bequeath to my beloved wife, Missouri E. Grigsby, all my household property used about

my residence in the town of Pittsfield, including my horse and surrey, which I give to her in lieu of special dower. I also devise unto my said wife, Missouri E. Grigsby, during her natural life and at her death to revert to my estate, my home place in Pittsfield, being lot seven (7), in block twenty-three (23), in said town of Pittsfield, in Pike county, Illinois.

"*Fifth*—It is my will, after the payment of all my debts, whether the same may be secured by mortgage or not, all the rest and residue of my estate shall be divided as follows, to-wit: To my wife, Missouri E. Grigsby, one-half; to my son James H. Grigsby one-eighth; to my son Hugh DeLoss Grigsby one-eighth; to my daughter, Lola V. Anderson, one-eighth, and to my son Elmer E. Grigsby one-eighth."

The court decreed a partition in accordance with the prayer of the bill, and the defendants have appealed.

The intention of the testator, which must control in the construction of his will, is the intention expressed by its words and not an intention which it may be inferred from circumstances he might have had but has failed to express. The second clause of this will deals with the provision of a home for the testator's widow during her lifetime, and in it the testator has expressed a manifest intention that she should have an estate for her life in their homestead. In that clause he makes no other disposition of the homestead, but merely declares that at her death it is to revert to his estate. This is the legal result of the grant of a life estate without more. The reversion remains in the grantor, and upon the expiration of the life estate the enjoyment and possession of the property return to the grantor or his heirs or assigns. The ordinary meaning of the words "revert to my estate" is, "return to the aggregate of all the property which I may leave at my death."

It is contended on behalf of appellants that the words "at her death to revert to my estate," constitute a devise

of a contingent remainder to those persons who may answer the description of the testator's heirs at the time of the death of the appellee.   Wills speak from the death of the testator, and, unless controlled by a manifest intention to the contrary, estates devised will be construed as vesting at that time.   The words "at her death" refer not to the time of ascertaining the persons who may be entitled to the estate, but to the time when such persons shall come into the possession and enjoyment of it.   The word "estate" is not equivalent to "heirs."   When a man makes a will the business in which he engages is the distribution of his estate, usually among his heirs and perhaps other persons. The estate is the subject matter with which he deals; the heirs are possible distributees.   When a portion of the estate has been placed temporarily at the use or disposal of a devisee, it is a natural form of expression to declare that upon the cessation of the use such portion shall return to the estate, or fall into the estate, or become a part of the estate or of the residue of the estate.   All these expressions have substantially the same meaning.   This natural meaning of the words may be controlled by a different intention manifested by the language of the will, but unless so controlled it will be given effect.   Since the remainder after the life estate to the widow is not otherwise disposed of, it passes by the devise, in the fifth clause, of "all the rest and residue of my estate."

It is insisted that it is absurd to suppose that the testator intended to give an estate for life to his widow by the second clause of his will and half the fee in remainder by the fifth clause, and that there never was a case where an estate for life was expressly devised to the first taker that the devisor intended that he should have any more. The latter proposition is true enough where the court undertakes the construction only of the clause creating the life estate, and this expression has been used by this court in reference to devises involving the rule in *Shelley's case.*

But there is nothing inherently absurd in a testator's giving to one of several to whom a fee is devised the enjoyment of the whole property during his lifetime, or to a life tenant of the whole a share of the fee in remainder. In *Smith* v. *Winsor*, 239 Ill. 567, we stated that the weight of authority established the rule that in case of a devise for life to one who was an heir of the testator with remainder in fee to the testator's heirs, the devise of the estate for life in all the property will not exclude the life tenant from sharing in the remainder, though an exception to this rule was recognized in *Johnson* v. *Askey*, 190 Ill. 58, where the life tenant is the sole heir and the remainder is devised to "heirs" of the testator; and the latter case, while stating the exception, recognized the rule and referred to and distinguished the case of *Kellett* v. *Shepard*, 139 Ill. 433, where it was affirmed.

Some reliance is placed by the appellants upon the acceptance by the appellee of the provisions of the will relating to the personal property as an estoppel against her present claim. It does not appear, however, that she has received anything or done any act inconsistent with her present contention, or upon which any of the appellants have relied or could have relied and acted to their disadvantage. Her failure to demand a partition or seek a construction of the will sooner cannot operate to affect her rights, particularly in the absence of any disadvantage to the appellants.

It is also insisted that partition cannot be had during the existence of the life estate, and the appellants cite *Dee* v. *Dee*, 212 Ill. 338, in support of this contention. In that case it was held from the language of the will that it was the purpose of the testator to postpone a division of the estate until the death of the widow. This will manifests no such intention, and no legal or equitable reason is shown which should control the ordinary right of an adult tenant in common to a partition of the estate.

After the testator's death one of his sons died, leaving a widow and two sons his heirs. The decree awarded the widow dower in the share of her sons, and it is argued that this was erroneous. It was erroneous but it is not assigned as error. The widow joined in this appeal, together with her sons, who are adults and all those claiming under the will of Strother Grigsby, except the appellee. The assignments of error question only the construction of the will and the action of the court in decreeing partition. Only the sons of the deceased son can complain of the provisions of the decree in regard to dower, and they have not done so.

*Decree affirmed.*

HAND and CARTWRIGHT, JJ., dissenting:

It is agreed that appellee (the widow) took a life estate in the premises, and the sole question here to be determined is, did she take one-half of the fee?

In construing a will the entire will must be considered. By the second paragraph of the will the appellee is given a life estate in the premises in controversy. By the third paragraph she is given one-third of the rents during life, arising from the lands devised to the son Hugh D. Grigsby, and by the fifth she is given one-half of the estate remaining after the payment of debts. The property which is given to the appellee under those provisions of the will she is given enjoyment of immediately, and it does not seem reasonable that in addition to the property which is thus given to the appellee the testator intended she should have one-half of the fee in the premises in which she is given a life estate, which she would not come into possession of during her life. In *Carpenter* v. *VanOlinder,* 127 Ill. 42, on page 47, it was said: "There never was an instance where an estate for life was expressly devised to the first taker that the devisor intended he should have any more." We think it apparent, when the will is considered as a whole, that the testator intended that his widow should enjoy the use of the homestead during her life and upon her

death it should go to his then living heirs; that the words, "at her death to revert to my estate," signify that upon the death of the appellee the fee underlying the life estate in the homestead should be divided among his then heirs. There is no expression found within the four corners of the will which indicates a desire on the part of the testator that any part of his real estate should go to the heirs of his widow, which would be the case if the widow took a life estate and at her death took one-half the fee in the homestead premises, (*Johnson* v. *Askey,* 190 Ill. 58,) and there is nothing in the will to indicate that the testator intended his widow should have a life estate in the homestead and at the same time an undivided one-half of the fee therein. On the contrary, it is quite evident that the testator proceeded upon the assumption that the widow would occupy the homestead during her life; that that part of his estate would not be divided under paragraph 5 of the will, as the portion of the estate covered by that paragraph of the will he evidently intended should be divided immediately upon payment of his debts; that his children or their children would survive the widow, and upon her death the portion of his estate occupied by the widow would become disencumbered of her life estate and would then be divided among his then living heirs. It was said in the *Johnson case,* that while the law favors the vesting of remainders and will fix the time at which they vest at the time of the death of the testator rather than at the period of distribution, where it clearly appears from the entire will that it was not the intention of the testator that the remainder should vest at the time of his death but at the period of distribution such intention will be carried out by the courts.

We have reached the conclusion that the appellee took only a life estate in the premises sought to be partitioned, and that the trial court erred in holding that she was the owner of one-half of the fee therein.