MARTIN *et al. v.* HALE *et al.*

(*Nashville,* December Term, 1933.)

Opinion filed May 19, 1934.

Robert L. Forrester, of Watertown, and Louis Chambers, of Lebanon, for appellants.

Haskell B. Talley, Hancock & Hancock, all of Murfreesboro, C. C. Davis, of Watertown, and E. D. Hancock, of Murfreesboro, for appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

John W. Bryan died in 1913, leaving a wife and two children, a single daughter, Anna C., and a married daughter, Ida B. Martin. He left a will, executed in 1907, by which, in item 2, he bequeathed to his wife and unmarried daughter an estate for life in his home place known as the "Ashley Young" property; and, in item 3, bequeathed the remainder of his estate to his two daughters. The daughter Anna died in 1918. The wife remained in possession until April, 1933, when she died. Meanwhile, the married daughter had died in March preceding. She bore no children, but left a will by which she devised her property and all interests therein to her husband and his children, who are the complainants claiming under the will of Mrs. Ida B. Martin, insisting that John W. Bryan died intestate as to this Ashley Young property and that, upon his death, the fee in this property passed to his daughters, then living, subject to the life estate of his wife and single daughter; that

upon the death of the single daughter her interest was inherited by her surviving sister, Mrs. Martin.

The defendants are next of kin of John W. Bryan as of the death of the wife, and insist that, properly construed, the effect of item 2 of the will was to vest this part of the testator's property in his next of kin occupying that relationship "at the death of the wife Ellen M. Bryan;" that, this death not occurring until after the death of both daughters, without issue, they are takers as such next of kin.

As suggested, construction of items 2 and 3 of the will is called for. These read as follows:

"Item 2. In view of the fact that my wife Ellen M. Bryan has a separate estate, and further, at my death she will be entitled, under the laws of the United States, to a pension of Eight Dollars per month I do hereby bequeath to her during her natural life the house and lot whereon we now reside known as the Ashley Young property, and such of the household and kitchen furniture as she may choose for her use. And further that Anna Bryan (our daughter) is to have a home with her mother Ellen M. Bryan on said property while she remains single, each to bear the expense of their living proportionately, and further that at the death of the wife Ellen M. Bryan all of aforesaid property is to revert to my estate.

"Item 3. That the remainder of my estate both Real and Personal I bequeath to my daughter Ida B. Martin and Anna C. Bryan or the heirs of their bodies equally, except that Anna is to have two hundred dollars first to make her equal with Ida."

The case for the defendants rests on the insistence (1) that the concluding words of item 2, "and further

that at the death of the wife Ellen M. Bryan all of aforesaid property is to revert to my estate," were intended as a devise of this home place to take effect at the death of the wife; and (2) that the "remainder" expressly devised in item 3 was intended to refer only to property of the testator other than this tract or parcel. For complainants it is contended (1) that no disposition was intended to be made of the fee by this language in item 2, with the legal result that the property in which life estates were created in the wife and daughter by this item passed to the then next of kin of the testator, his two daughters, and so vested, upon his death; and (2) that, consistently with this view, the testator, by item 3, immediately following, intended by the express devise of "the remainder of my estate both real and personal," to include in this bequest to his daughters named in this connection, or "the heirs of their bodies equally," the fee in this particular parcel, and that, this being so, their interest therein vested upon his death.

The chancellor held with the complainants that the fee was not devised by item 2 and that the fee in the remainder vested at once upon the death of the testator in his then next of kin, his daughters.

We do not understand it to be controverted that, unless the fee was devised by the use, in item 2, of the words, "all of aforesaid property is to revert to my estate," Bryan died intestate as to this parcel, and the fee vested upon his death in these daughters.

The difficulty with the contention that a devise was made by this language is that *no devisee is designated.* The argument is that "to revert to my estate" should be taken to mean "to revert to my" *heirs,* "at the death of the wife Ellen M. Bryan." But "estate and heirs are

not equivalent terms; the estate is the subject-matter with which the grantor deals; the heirs are possible distributees.'' 21 C. J., 914. The essential of identity in designation of the devisee is wanting.

It is the use of the term ''revert'' which is responsible for the apparent confusion. It seems reasonable to infer that in using the word ''revert'' the testator's purpose was to emphasize and confirm the limitation of the estate devised to the wife to her life; to repeat that his gift to her was of a life estate only, that else and otherwise his fee was to be unaffected. It was this life estate which was to return, come back, revert.

But, however this may be, we find, as already indicated, a fatal want of designation of a donee or devisee in the words used.

Counsel for complainants, devisees of Mrs. Ida Martin, cite and rely chiefly on *Downing* v. *Grisby,* 251 Ill., 568, 96 N. E., 513, 514; *Gardner* v. *Anderson,* 116 Kan., 431, 227 Pac., 743; *Estate of Glass,* 164 Cal., 765, 130 Pac., 868; and *Lyman* v. *Sohier,* 266 Mass., 4, 164 N. E., 460. We quote from and adopt the following from the opinion in the *Downing Case, supra,* as directly in point:

''The intention of the testator, which must control in the construction of his will, is the intention expressed by its words, and not an intention which, it may be inferred from circumstances, he might have had, but has failed to express. The second clause of this will deals with the provision of a home for the testator's widow during her lifetime, and in it the testator has expressed a manifest intention that she should have an estate for her life in their homestead. In that clause he makes no other disposition of the homestead, but merely declares that at her death it is to revert to his

estate. This is the legal result of the grant of a life estate, without more. The reversion remains in the grantor, and upon the expiration of the life estate the enjoyment and possession of the property return to the grantor or his heirs or assigns. The ordinary meaning of the words 'revert to my estate' is 'return to the aggregate of all the property which I may leave at my death.'

■ "It is contended on behalf of appellants that the words 'at her death to revert to my estate,' constitute a devise of a contingent remainder to those persons who may answer the description of the testator's heirs at the time of the death of the appellee [the widow]. Wills speak from the death of the testator, and, unless controlled by a manifest intention to the contrary, estates devised will be construed as vesting at that time. The words 'at her death' refer, not to the time of ascertaining the persons who may be entitled to the estate, but to the time when such persons shall come into the possession and enjoyment of it. The word 'estate' is not equivalent to 'heirs.' When a man makes a will, the business in which he engages is the distribution of his estate, usually among his heirs, and perhaps other persons. The estate is the subject-matter with which he deals. The heirs are possible distributees. When a portion of the estate has been placed temporarily at the use or disposal of a devisee, it is a natural form of expression to declare that upon the cessation of the use such portion shall return to the estate, or fall into the estate, or become a part of the estate, or of the residue of the estate. All these expressions have substantially the same meaning. This natural meaning of the words may be controlled by a different intention manifested by the

language of the will, but unless so controlled it will be given effect. Since the remainder after the life estate to the widow is not otherwise disposed of, it passes by the devise, in the fifth clause, of 'all the rest and residue of my estate.' ''

Counsel for defendants stress that a dissenting opinion was filed by two of the justices, but this dissent was not apparently directed at that portion of the opinion above quoted. In that case the will carried a residuary clause in which the wife was included along with children. The dissent was directed to the holding that the widow took a half interest in the fee under the fifth item of the will in the same property in which she was devised a life estate under the second item. But the construction given in the majority opinion of the words ''and at her death to revert to my estate'' we do not understand to be questioned. The general proposition that a devise to a person for life and at his death ''to revert to my estate'' is a devise of an estate for life merely, and the reversion remains in the grantor, unless there is a residuary clause in the will, is sustained by many other Illinois cases cited in the brief in the *Downing Case*.

Expressions in opinions from other states are in harmony with this view. So, in *Gardner* v. *Anderson, supra*, Kansas Supreme Court, the headnote reads, ''A devise or bequest of property to an estate is void, because an estate is not a person or legal entity capable of taking it, and the result is an intestacy.'' The will of Zimm Gardner was construed. The court said: ''It will have to be noticed that the will provides that, if Georgia (a daughter) has no issue, then the testator's property 'shall revert to the Gardner estate.' That direction is either a bequest or it is not. If it is a bequest, it is void, because an estate cannot be a devisee or legatee.'' The

court then quotes with approval from *Estate of Glass,* 164 Cal., 765, 130 Pac., 868, as follows: "The estate of a deceased person is not a person or entity which can take under a will."

Counsel for defendants rely on *Cochran* v. *Lee's Adm'r* (Ky.), 84 S. W., 337, as "directly in point." The language there construed was "If any of my children die without issue of their body, his or her portion shall revert to my estate *for the benefit of the living heirs."* We have italicized the words which distinguish that case from the one at bar and defeat its application. There the beneficiaries of the gift, the class of donees, were definitely designated.

 Recognizing the general rules, as do we, that in constructing a will the court (1) must be governed by the testator's intention, if not contrary to some rule of law, and (2) will not find intestacy unless plainly indicated, it was held by the Supreme Judicial Court of Massachusetts, in *Lyman* v. *Sohier,* 266 Mass., 4, 164 N. E., 460, 461, that the words "and in default of such issue shall revert to my estate" did not pass the title to heirs. Said the court, "nor do the words 'my estate' mean 'my heirs.' If the testator intended that the share should revert to his heirs he could easily have said so. But he did not say this." It is said that this same court held differently in *Leary* v. *Liberty Trust Co.,* 272 Mass., 1, 171 N. E., 828, 69 A. L. R., 1239, but a controlling distinction appears in that case, in that the donee was designated in the clause considered. In that case the fund was provided to go to a brother, James, "if he be then living and in event of his death to his, said James' estate." The court rightly found that by this language the testator sufficiently designated the donee to take in the event named.

The principle which we apply is basic. It is recognized in our text-books and decisions quite uniformly, and is thus well stated: "In order that a beneficiary may take under a will he must be designated therein, either by name or by description with such certainty that he can be readily identified and distinguished from every other person, otherwise, the devise or bequest is void for uncertainty." 40 Cyc., p. 1445.

Stress is placed in argument on the rule that the intention of the testator must govern despite use of apparently conflicting words. But we find nothing on the face of this instrument, or in the surrounding circumstances, indicating an intention to deflect the testator's estate, or any part of it, from his direct descendants, his two daughters, who were, we think it apparent, the primary objects of his affection and concern aside from his wife.

Although finding that the testator made no disposition in item 2 of the will of this Ashley Young property, we hold that he did not, however, die intestate as to it, but that his intention, consistently with this view, was to bequeath to his daughters, by item 3, as part of the "remainder" therein dealt with, the fee in the Ashley Young property, in which, by item 2, he had given a life estate to his wife, and until *her* death only, a life estate to his unmarried daughter. We give effect to this intention. Presumably the life estate of this daughter was made to terminate on the death of the widow, in contemplation that the possession would pass to the daughters when and in the event the mother should predecease the single daughter. Otherwise this daughter would be ousted from the home by the death of the widow. We find no error and the decree is affirmed.