**WEBSTER et al. v. STATE MUT. LIFE ASSUR. CO. OF WORCESTER, MASS.**

**Civ. No. 2021.**

District Court, S. D. California, Central Division.

April 15, 1943.

Martin H. Webster, of Los Angeles, Cal., for plaintiffs.

Martineau & Stratton and Richard C. Heaton, all of Los Angeles, Cal., for defendants.

HALL, District Judge.

On June 10, 1937, the plaintiff, Henry Webster, as the insured, under two life insurance policies then in force with the defendant, executed the first three, and his wife, Caroline, the fourth of the following documents:

1. A change of beneficiary from his wife, Caroline, to his estate (Exhibit "C");

2. An amendment to his original application, whereby he relinquished the right to change beneficiaries without their consent (Exhibit "D");

3. A designation of his wife, Caroline, as beneficiary with power to sell, surrender, or assign, without his consent, and by the same instrument transferred to her all benefits existing under the policy or which might accrue to him, his executors, or assigns (Exhibit "E").

4. "Nomination of Beneficiary and Request" (Exhibit "F") which was identical in terms (except for differences not material to this controversy), as a fifth document designated.

5. Exhibit "G" which was executed by Caroline on December 15, 1937. It was also designated "Nomination of Beneficiary and Request." It is requested "That if said policies become claims" the proceeds be retained by the company in accordance with, "installment Option 'C'" of the policy, and generally directed that such proceeds be paid as follows:

(a) The interest income to be paid to her for life; then (b) to Martin Webster, her son, but if she died before her son, Martin Webster, was 30 years of age, he was to get the interest until he was 30 years of age, after which he could consume the principal or leave it. In which latter event it went to his issue, if any, at his death; and if no issue then (c) to his sister, Cecile, with the same privilege and conditions of consumption of principal.

Pursuant to a requirement of the policy that such changes must be accepted by the defendant company and endorsed on the policy to be effective, the documents and policies were transmitted to defendants home office in Massachusetts for that purpose. The parties agree that such acceptance and endorsement were necessary to make the instrument effective.

In the brief, some question is raised by the plaintiff concerning the order of acceptance of the above documents, and endorsement thereof on the policies by the defendant. But it was stipulated at the trial that on July 6, 1937, each of the first four above documents were accepted by the company and endorsed on the policy in the order above set forth, and that Exhibit "G" was accepted after its date.

On December 17, 1941, plaintiff, Henry, the insured, requested defendant to lend him the full combined loan value of the policies. Plaintiffs Caroline, Martin, and Cecile joined in the request, and on the same day executed an instrument requesting the revocation of the instrument, Exhibit "G", above mentioned.

The defendant's refusal to accept that request for revocation and to make the loan, on the ground that the unborn children of Martin and Cecile were irrevocably named as beneficiaries by Caroline in the instrument of December 15, 1937 (Exhibit "G"), and that the consent of such unborn children is necessary, and obviously cannot be obtained, has precipitated this suit for declaratory relief.

All of the parties, Henry, Caroline, Martin and Cecile, are still living. Martin has not attained the age of thirty years. Both he and Cecile are unmarried and have never had issue, and are now without issue born or in esse.

The home office of the defendant is in Massachusetts. The policies were taken out in New York where the plaintiff Henry and his family lived for a time, later acquiring residence in California. The plaintiffs' brief suggests some question of conflict of laws. But that question does not seem to be general in the case, and if it arises in connection with any point, will

be disposed of in the consideration of that particular proposition.

In view of the fact that Exhibit "G" supplants Exhibit "F," and, as pointed out, was identical in terms, except for matters not involved in this decision, no further attention will be given to Exhibit "F."

Exhibit "G," the defendant claims, is the instrument which designated the unborn issue of Martin and Cecile as beneficiaries, and is irrevocable because the insured waived his right to change beneficiaries, by executing Exhibit "D."

Many questions concerning the validity of the steps before the execution of Exhibit "G" are discussed by the parties in their briefs. Not all of these questions are necessary to be decided. The ultimate question the parties want decided, is whether or not the company can make the requested loan.

If the parties are properly before the court, and if Exhibit "G" can be revoked by Caroline, Martin, and Cecile, as attempted on December 17, 1941, then, to make the loan takes only the request by the owner of the policy and the consent of the living persons remaining as beneficiaries.

Considering first the question as to whether or not the parties are properly before the court.

On that point it is suggested that the unborn (and as yet unconceived) issue of Martin and Cecile have a sufficient interest in the proceeds of said policies to entitle them to be made parties to, or be represented in, this action. If it is determined that such interests exist, then it must be decided whether or not those interests are now, or can be represented by any of the persons who are now parties to the action or some one appointed especially for that purpose.

If their interest is such as to require them to be made parties to this action or to be represented either virtually or specially; and if their interests are not now and cannot be properly represented, then, of course, they cannot be made parties, as they are not yet in being. And it would follow that no further consideration need or can be given to the other issues raised in this lawsuit.

■ As will appear later in this memorandum, the unborn children of Martin and Cecile do not have vested interests according to the terms of the policies involved.

To apply the rule of indispensability of parties to such unborn issue where their interest is not vested would require that the rights and interests of living persons be postponed until it is determined whether or not Martin and Cecile ever have any children, or whether or not if they do have children, Martin will have consumed the principal, or, if Cecile ever has any children, Martin will have died without issue, or consumed the principal.

Borrowing from the language of a recent notable retort it may be said that such a proposition is too "ify," to freeze the rights of all the parties involved until such things which may never happen might not happen.

The exception[1] to the rule of indispensable parties permits the litigation to proceed without the presence, *as parties,* of the unborn issue of Martin and Cecile.

But it does not follow that their interests have no right to be represented. Whatever ultimate conclusion is made as to their rights, it is plain that there is a sufficient controversy concerning such interests that some one should be before the court to represent them.

It is not so much the representation of the persons, but the representation of the *interests,* with which the law is concerned in this type of action.

■ The general rule in that connection has been stated by the California courts as follows: "The rule and its reason are declared in Sweet v. Parker, 22 N.J.Eq. [453] 455, as follows: 'Many exceptions exist to the general rule that in equity all must be parties who have an interest in the object of the suit. The reason or principle of such exceptions is stated as follows in Calvert on Parties. § 2, p. 20: "If they are required to be parties merely as the owners and protectors of a certain interest, then the proceedings may take place with an equal prospect of justice if that interest receives an effective protection from others. It is the interest which the court is considering, and the owner merely as the guardian of that interest; if, then, *some* other persons *are present, who, with reference to that interest, are equally certain to bring forward the entire merits of the question,* the object is satisfied for which the presence of the actual owner would be so required, and the court may, without putting

---

[1] Mabry v. Scott, 1942, 51 Cal.App.2d 245, 124 P.2d 659.

any right in jeopardy, take its usual course and make a complete decree." ' The rule is made applicable to representation of persons living, as well as those unborn * * *." [2] (Italics supplied.)

█ The plaintiffs contend that the interests of the unborn issue are virtually represented by Martin and Cecile, who are plaintiffs to the action, and whose issue are involved. I cannot accede to this view. The rule of virtual representation requires that the interest of the representative and the represented must be so identical that the motive and inducement to protect and preserve may be assumed to be the same in each, and there can be no adversity of interest between them. [3]

In the instant case Martin and Cecile are both parties to the action and are joined in the endeavor of the insured to revoke and cut off completely any possible rights of any children which might be born to Martin and Cecile.

In Mabry v. Scott [4] the court had under consideration a proposed compromise of a trust involving the unborn issue. In that case a guardian ad litem had been appointed by the trial court to represent and defend the interests of the unborn (and unconceived) issue, and the Appellate Court expressed approval of the action, saying 51 Cal.App.2d at page 256, 124 P.2d at page 665: "Courts of justice as an incident of their jurisdiction have inherent power to appoint guardians ad litem," and cited several cases, in each of which, however, there were living persons from whom a guardian ad litem had been appointed.

Upon the suggestion by the court that consideration should be given to the appointment of a guardian ad litem to represent the interests of the unborn issue in this case, the defendant filed a memorandum vigorously contending that no guardian ad litem could be appointed, unless there was a specific statute authorizing it, and asserting no such statute existed.

If, however, some party or parties to this action, in the preservation of their rights, have an interest to preserve the proceeds of the policies the same as the unborn persons would have if they were present, and if it can be assumed the unborn persons will adopt the acts of those parties in connection therewith, then there is virtual representation and no further consideration need be given to the question as to whether or not a guardian ad litem can be appointed. The interests of representative and represented must be so identical that the motive and inducement to protect and preserve may be assumed to be the same in each.

█ The interests of the insurance company in endeavoring to preserve the proceeds of the policies for payment to the contingent beneficiaries is the same interest that these unborn persons would have if they were present. The defendant's acts are such in the effort to preserve those funds for the unborn children that it can be assumed the latter would adopt them. The motive and inducement to protect and preserve the funds is certainly not less with the insurance company than with the unborn if they could be present. The insurance company "with reference to that interest, are equally certain to bring forward the entire merits of the question." [5]

█ The law has said that if those things are true the object is satisfied for which the presence of the actual owner would be required, and the court may without being in jeopardy take its usual course and make a complete decree.

In Restatement [6] is the following:

"183. Prerequisites for Representation of Unborn Person.

"A person unborn at the time of the commencement of a judicial proceeding is duly represented therein by a person duly joined as a party thereto when

"(a) the person so joined as a party, and the unborn person, sustain to each other such a relationship that an adequate presentation of the legal position of the party would be an adequate presentation of the legal position of the unborn; and

"(b) the judgment, decree or other result of such proceeding operates with equal regard for the possible interests of the person joined as a party and of the unborn person; and

2 County of Los Angeles v. Winans, 1910, 13 Cal.App. 234, at page 245, 109 P. 640 at page 646.

3 County of Los Angeles v. Winans, 1910, 13 Cal.App. 234, 109 P. 640.

4 Mabry v. Scott, 1942, 51 Cal.App.2d 245, 124 P.2d 659.

5 County of Los Angeles v. Winans, supra, 13 Cal.App. at page 246, 109 P. at page 646.

6 Restatement of the Law, Property, Future Interests, Section 183, p. 735.

"(c) The conduct of the person so joined as a party constitutes a sufficient protection under the rule stated in Chapter 185."

The insurance company and the unborn infants sustain to each other such relationship that an adequate presentation of the legal position of the insurance company is an adequate presentation of the legal position of the unborn children. The decree will operate with equal regard for the interest of the insurance company and the possible interest of the unborn children, and the conduct of the insurance company as a party to this action in vigorously presenting its views in the interest of preserving the proceeds of the policy for the payment to the unborn issue of Martin and Cecile can be described as constituting a sufficient protection.

█ As to what is "sufficient protection" Restatement lays down the following:[7] "The conduct of the person joined as a party constitutes the 'sufficient protection' required in * * * Section 183(c) for the representation of living or unborn persons whenever it does not appear affirmatively that such person acted in hostility to the interest of the person claimed to have been represented by him."

There is no apparent hostility of conduct or hostility of interest between the insurance company and the unborn issue. It cannot be said to have been lacking in activity or in skill.

Quoting further from the same treatise, p. 747,[8] "The rule of representation rests upon the inference of fact that the interest of the person represented will be protected as a by-product of the efforts of the representative to protect his own interest."

It is concluded, therefore, on this subject that Martin and Cecile do not virtually represent the interests of the unborn issue; that it is unnecessary to appoint a guardian ad litem, assuming one could be appointed; and that there is the pre-requisite concurrence of interest and effort between the insurance company and the unborn children so that as a matter of law the interests of those unborn children in this litigation can be and are virtually represented by the insurance company.

Before considering the irrevocability of Exhibit "G" the validity and effectiveness of Exhibits "C", "D", and "E" must be determined.

At the time, and prior to the execution by Henry of Exhibit "C", designating his estate as beneficiary, his wife, Caroline, was beneficiary of both policies. Exhibit "C", as well as all of the other exhibits, are dated "at Los Angeles."

The fact that Exhibit "C" is dated "at Los Angeles," suggests the presence of the question that the community property laws of the State of California, if the parties were domiciled here, would prevent Henry, the insured, from changing the beneficiary from his wife to his estate, even though he had then reserved the right to do so in his policy. This question, however, was not touched upon by the parties, and no evidence was introduced concerning the residence or domicile of the parties on or prior to the 10th of June, 1937 (the date of the documents) or the 6th of July, 1937 (the date of acceptance by the insurance company). Hence, no question is made concerning the right of Henry to thus change his beneficiary from his wife without her consent.

The change having been made in the manner required by the policies, and the company having accepted the change by endorsement on the policies, it must be regarded that the change by the insured of the beneficiary from his wife to his estate in Exhibit "C" was lawful.

█ Whatever the state of the law is concerning the right of the insured in California to change the beneficiary from his wife when he reserves the right to do so, it is generally settled that when the insured waives the right to change beneficiaries without the consent of such beneficiary (if living), he has lost the power to make that change.

█ Plaintiff attacks the validity of Exhibit "D" whereby he waived the right to change the beneficiaries on two grounds: first, that it cannot be determined in what order the company accepted this change, and endorsed it on the policy, and second, that there was no consideration moving to Henry, the insured, for the change.

Plaintiff's first contention in this respect was settled by the stipulation at the trial that the instruments were accepted by the company and endorsed on the policies in the order above named.

---

[7] Restatement, Property, Future Interests, Section 185, p. 746.

[8] Restatement, Property, Future Interests, Section 185, p. 747.

His second ground—lack of consideration moving to Henry—is not well taken, in view of the presumption of consideration on a written instrument and the complete lack of evidence to the contrary. Nothing appears in the record as to why the insured went through all of the various procedures in executing the different documents on the same day. The wife was already beneficiary when he changed it from her to his estate; he then again designated her as beneficiary immediately and forthwith. The documents Henry executed on that date culminated in not only re-designating his wife as beneficiary, but assigning all of his right to her under the policy as well. That assignment was a gift. It was supported by valuable consideration, namely, love and affection. And if for no other reason, consideration must be held to exist for the execution by Henry of Exhibit "D", because it was part of his scheme to make a gift of these policies to his wife.

Exhibit "D" is designated "Amendment of Application." The application under the terms of the policy becomes a part of the contract. The question as to whether or not Exhibit "D" relates back to the time of the issuance of the original policy of insurance to prevent Henry from thereafter changing any designation of beneficiary, is not touched on by the parties in their briefs and is not considered or decided. Furthermore, the document itself provides that it shall become effective upon the receipt and acceptance by the company at its home office. It was accepted July 6, 1937, before the acceptance of Exhibit "E" naming Caroline as beneficiary and assigning the policies to her.

In discussing the validity of that document (Exhibit "E") the briefs touch the question as to whether or not the insured, having designated his estate, and then having amended his policies to waive his right to change the beneficiary, could change the beneficiary from his estate to his wife. The designation of "legal heirs"[9] or "surviving child or children,"[10] and similar phrases are designation of persons. But the designation of an "estate," as used in an insurance policy, is the designation of an abstraction. It is a word used to describe a condition of property, and not to describe its owner.[11]

Moreover, the term beneficiary, as used throughout the insurance policy in question, contemplates a person or being having a "lifetime," "during" which some one is capable of giving or withholding consent to a loan, or an assignment, or a change of beneficiary. An estate is not such a thing. It is not an entity, and could never give consent to a change in beneficiary, because it cannot come into being until a man is dead. Moreover, with the estate designated as beneficiary, the insured had complete control over its disposition by any will which he might leave, just the same as if he had designated himself as beneficiary.

That being so, the insured, even though having executed the waiver of his right to change beneficiaries, could and did thereafter designate a beneficiary different than his estate.[12]

The defendant made such a designation by executing Exhibit "E". By it the insured did "nominate as beneficiary thereunder my wife, Caroline H. Webster; hereby giving the said beneficiary full power to sell, surrender, or assign (either to secure loans or otherwise) without my assent; also hereby transferring to said beneficiary all my right to any dividends or other benefits under the above captioned policy of insurance which might otherwise accrue to me, my executors, administrators, or assigns."

It is seen from the foregoing that in addition to naming his wife beneficiary, he thereby assigned the policy to her. The insured's rights under the policy were different than those of the beneficiary, and so are the rights of the assignee of the insured. An assignee becomes the owner of the policy and takes the place of the insured.[13] And here Caroline was both the beneficiary and the assignee of the insured.

---

[9] Yore v. Booth, 1895, 110 Cal. 238, 42 P. 808, 52 Am.St.Rep. 81.

[10] Wood v. Northwestern Mut. Life Ins. Co., 1939, 5 A.2d 788, 17 N.J.Misc. 116.

[11] Tanner v. Estate of Best, 1940, 40 Cal.App.2d 442, 104 P.2d 1084; Downing v. Grigsby, 1911, 251 Ill. 568, 96 N.E. 513; Abraham v. Abraham, 245 App.Div. 302, 280 N.Y.S. 825; Martin et al. v. Hale et al., 1934, 167 Tenn. 438, 71 S.W. 2d 211.

[12] In re Pastore's Estate, 1935, 155 Misc. 247, 279 N.Y.S. 200; Mutual Ben. Life Ins. Co. v. Clark, 1927, 81 Cal.App. 546, 254 P. 306; Mutual Ben. Life Ins. Co. v. Swett, 1915, 6 Cir., 222 F. 200.

[13] Mutual Ben. Life Ins. Co. v. Clark, 1927, 81 Cal.App. 546, 254 P. 306, and other cases cited.

Hence she received by Exhibit "E" all that was possible for Henry, the insured, to give under the policies, and all that it was possible for any one else, as beneficiary, to receive under them. Henry had nothing left but the right to pay or not to pay the premiums, as counsel rather plaintively puts it.

Considering now the question whether or not the instrument of December 17, 1941, can revoke Exhibit "G".

In this connection it will be assumed that Exhibit "G" was a valid and effective instrument as to form and manner of execution.

■■■ The provisions of the policy form the contract between the parties and must govern as to when and how a beneficiary can be changed, and when consent is necessary. This is so, unless there is law to the contrary, or the terms of the contract are against public policy. Neither of these contentions obtain here. And the general rules on interpretation of contracts are the same in California, New York and Massachusetts, so there is no question on conflict of laws with relation to the matter which will now be discussed.

Turning then to the contract: The provisions in policy No. 347582B, relating to change in beneficiary, are as follows: "Change of Beneficiary. If the right to do so has been reserved in the application for this policy, the insured, if of full age, at any time during the continuance of this policy may, subject to the right of any assignee, change and successively change the beneficiary hereunder, whether original or substituted, without his or her consent. The insured may, however, declare the designation of any beneficiary to be irrevocable. During the lifetime of any irrevocably designated beneficiary, the insured shall not have the right to revoke or change the designation of that beneficiary without his or her consent. Any change or designation will take effect only when endorsed on this policy at the Company's Home Office, following the receipt of such form of request as the Company may require. If any beneficiary, revocable or irrevocable, dies before the insured, the interest of such beneficiary shall vest in the surviving bene-

ficiary or beneficiaries, unless otherwise directed by the insured. If no designated beneficiary survives the insured, the beneficial interest in this policy shall vest in the estate of the insured."

The provisions relating to change in beneficiary in Policy No. 207255B are as follows: "Change of Beneficiary. If the right to do so has been reserved in the application for this policy, the insured, if of full age, at any time during the continuance of this policy, may change and successively change the beneficiary hereunder, whether original or substituted, without his or her consent, provided that any proposed beneficiary shall have an insurable interest in the life of the insured, and further, that any change in beneficial interest shall be subject to the right of any assignee. The insured may, however, declare the designation of any beneficiary to be irrevocable. During the lifetime of any irrevocably designated beneficiary, the insured shall not have the right to revoke or change the designation of the beneficiary, without his or her consent. If any beneficiary, revocable or irrevocable, dies before the insured, the interest of such beneficiary shall vest in the insured. Every change or designation must be made by written notice to the Company at its Home Office, accompanied by this policy, and will take effect only when endorsed on this policy by the Company."

■■■ The general rule is that where an insured reserves the right to change the beneficiary in the policy, then the beneficiary has only a contingent interest, subject to the insured's desire and right to revoke or change the beneficiary; but if the insured does not reserve the right to change beneficiaries, or designates a beneficiary as irrevocable, or waives it, then the beneficiary has a vested interest which cannot be disposed of without the beneficiary's consent.

The California cases in the footnote state the general rule and refer to authorities from other states.[14]

It is clear that if the insured desires to retain control over the policy he must make special provisions in the policy for such control.[15]

[14] Yore v. Booth, 1895, 110 Cal. 238, 42 P. 808, 52 Am.St.Rep. 81; Mutual Ben. Life Ins. Co. v. Clark, 1927, 81 Cal.App. 546, 254 P. 306; Morrison v. Mutual Life Ins. Co. of N. Y., 1940, 15 Cal.2d 579, 582, 103 P.2d 963.

[15] Morrison v. Mutual Life Ins. Co. of N. Y., 1940, 15 Cal.2d 579, 582, 103 P.2d 963.

It is the duty of the court to ascertain the intention of the insured from the contract and give that intention effect, provided it does not contravene public policy or any statute.[16]

There is no question in this case of a contravening statute or public policy.

If there are special provisions in the contract which place limitations of time, method, manner, or otherwise, on any beneficiary's right to give or refuse consent, those provisions, of course, must prevail over the general rule.

There are special limitations in the policy here involved:

As to the manner and *method:* (1) any designation must be on such "form" of request as the company may require; (2) no designation is effective until "endorsed" on the policy; (3) and the policy must be physically delivered to the company, so that such endorsement can be made on it (4) "at the Company's Home Office."

There is a fifth limitation: under policy No. 347582-B, the *extent* or quantity and time of the beneficiaries' right is limited if any beneficiary *dies* before the insured; the right to give or refuse consent to a change of beneficiary does not pass to the beneficiary's estate or his successors, but he loses everything under the policy; all his rights either vests in the surviving beneficiary or beneficiaries, or are disposed of as "otherwise directed by the insured." Under policy No. 2722555-B, if any beneficiary *dies* before the insured, such interest vests in the insured.

In addition to these limitations of method and quantity of right there is still a *sixth* limitation as to the *time* when an irrevocably designated beneficiary has a right to give or refuse consent to any change and that time is provided to be "during the lifetime" of such a one. The clause reads (the same in both policies): *"During the lifetime of any* irrevocably designated beneficiary, the insured shall not have the right to revoke or change the designation of that beneficiary without his or her consent."* (Italics supplied.)

Omitting the words "during the life time" that sentence contains the general rule of law applicable to the rights of beneficiaries, which rule of law would be read into the contract if the contract were silent on the subject. But that rule of law may be altered by the contract of the parties. It is evident that the drawer of the contract and the parties accepting it desired not to let that rule of law govern the rights of beneficiaries, and instead desired to modify and limit these rights to the period of the lifetime of the beneficiaries, and hence added the words "during the life time."

Not only must that phrase "during the life time" be considered as a limitation intended to apply to the remainder of the sentence but to the whole paragraph and contract. Words used in a contract must be given meaning if possible.

The words "during the life time" are wholly without meaning unless the interpretation is placed thereon as herein found. It was not necessary to add that language to the policy if it was intended to deal with the rights of such beneficiaries only after their death. The last sentence of the paragraph in each of the policies deal with that situation in permitting, in the one instance, the proceeds to go to a surviving beneficiary, or giving the right to the insured to otherwise direct it, and, in the other instance, to let the insurance vest completely in the insured. Such provision also indicates that the so-called "irrevocably designated beneficiary" is in fact only irrevocably designated if certain contingencies occur. In other words the "irrevocably designated beneficiary," as used in the policy, is irrevocably designated *conditionally* upon the terms set forth and particularly upon the beneficiary (1) coming into being and (2) surviving the insured.

As already noted, the right of a beneficiary to give or refuse consent does not exist *after* the death of the beneficiary, if such death occurs before the death of the insured. The question here is whether or not that right vested in such beneficiary before he or she comes into existence.

In statutes, in contracts, and in the daily lives of people the meaning of the word "during" is well understood. Webster defines it to be "in the time of; throughout the continuance or course of."

It is generally understood to mean just as the definition indicates, *while a thing is in existence*—not after it has ceased to exist, and not before it begins to exist. If, for instance, provisions were made in a contract that persons were to perform certain services "during their marriage",

---
[16] Mutual Ben. Life Ins. Co. v. Clark, supra.

it could not be said to mean they could be forced to do these services before they were married; or if contract No. 1 were drawn on the basis that contract No. 2 might come into existence, and contract No. 1 was to exist "during the life" of contract No. 2, it could not be argued that the obligations and restrictions of contract No. 1 arose or could be enforced before the time that contract No. 2 went into effect; or if an easement permitted travel over private lands "during the construction of a bridge" for instance, it could certainly not be determined to mean before the construction or any preparation for the construction of the bridge was begun; or a restriction on employees against smoking "during working hours" would certainly not prevent them from smoking after working hours or before working hours; or, suppose that a contract was drawn for the charter of a boat with lower rates "during" lay-over period in a certain named port, it could not be sensibly argued that the lower rate prevailed before they arrived at the designated port any more than it could be argued that the lesser rate prevailed after they left the port; privileges granted "during the month of July" for instance cannot be exercised before the beginning of that month; when we speak of something occurring "during the lifetime" of any named person we certainly do not mean before that person's life began, any more than we mean after that person's life is ended. Illustrations multiply in the mind, none of which suggest even faintly any stretching of the word "during" to mean "before" or "after."

No reason appears why the word "during" should have any different meaning in a life insurance policy.

The policy speaks of an "irrevocably designated beneficiary."

There are two ways that an irrevocably designated beneficiary can be created. (1) By designation as such under the provisions in the policy expressly permitting the insured to "declare the designation of any beneficiary to be irrevocable"; and (2) the mere designation of the person as beneficiary when the insured has not reserved the right to change beneficiaries. Beneficiaries created in either manner are described as "irrevocably designated" as these words are used in the policy.

The words "irrevocably designated" when applied to a beneficiary would tend to indicate that such beneficiary could not be changed at all, under any circumstances, or by any means, because if a thing is irrevocable, it cannot be called back or annulled or changed at all. But it is clear that no such unyielding, vice-like meaning was intended for those words in the insurance policy under consideration, because *any* beneficiary whether irrevocable or not can be changed *with* their own consent. Moreover, as above pointed out if such beneficiary dies before the insured, his interest is certainly revoked and changed, because it is lost completely by no act of either the insured or the beneficiary.

These words "irrevocably designated" as used in the policy plainly mean then that the designation is "irrevocable" only if revocation is attempted *in a manner* or *at a time* not permitted by the policy; otherwise stated, that the designation *is revocable* if made at the time and in the manner permitted in the policy.

And the words "during the life time" as used in the policy in reference to any beneficiary plainly only mean *after* the life of such beneficiary begins, and *before* it ends —*while* that life is in existence—and not before that life begins any more than after it ends.

The insured waived the right to revoke designation of beneficiary only according to the terms of the policy. By the phrase "during the lifetime" he parted with that right to revoke only while designated beneficiaries were alive; he reserved the right to make the change before those beneficiaries came into being and obtained it again when, and if they died.

There is nothing in any of the cases cited by the parties or examined which says that there cannot be a conditional reservation of the power of revocation.

Neither the insurance policy involved in Wood v. Northwestern Mut. Life Ins. Co., 1939, 5 A.2d 788, 17 N.J.Misc. 116, nor in Robinson v. United States, 1935, D.C., 12 F.Supp. 550, nor the policies involved in any of the other cases cited by the defendant, or independently examined, contain such a reservation to the insured as is expressed by the words in the instant policy "during the lifetime" of the beneficiary. Wood v. Northwestern Mut. Life Ins. Co., supra, is in fact illustrative of a conditional divestation of the right to revoke and is confirmatory of the power so to do. In that case the insured divested himself of the right to change beneficiaries only un-

til he became 35 years of age, and the court held when he attempted to cash the policy before that time that he must wait until he became 35 years of age.

■ Thus under the terms of the policy in question, the insured (or his assignee) had the right to revoke any designation of any beneficiary, so long as the consent of the living beneficiaries was obtained, and no obligation exists to await the coming into being of any unborn person designated to receive benefits from the policies.

As hereinbefore pointed out, neither Martin nor Cecile are married. Neither of them have had any children, and neither of them now have any children, living or in being. It is not, therefore, "during the lifetime" of their unborn issue, and the right of such unborn issue to give or refuse consent to revocation of Exhibit "G" does not and did not on December 17, 1941, exist under the terms of the policy.

It must be concluded, therefore, that the owner of the policy, namely, Caroline, had the right to revoke the designation of the unborn children of Martin and Cecile, with the consent of Martin and Cecile, who were also beneficiaries, and without the consent of the unborn issue of Martin and Cecile, for the reason that the lifetime of these unborn beneficiaries had not yet commenced.

The instrument dated December 17, 1941, signed by Caroline is within her rights, and under the policy is a valid and effective revocation of Exhibit "G."

As noted, the parties only revoked Exhibit "G" and did not revoke Exhibit "E," the assignment to Caroline, hence Caroline is now the full owner of the policies and sole beneficiary. She is the "holder" of the policies and by their terms "upon its proper assignment and delivery to the Company shall be entitled to a loan from the Company," etc.

■ That being so, there is no request for a loan from her, only from Henry, and he has no interest now in the policy. The company is therefore justified in refusing the loan, so long as Caroline remains the owner and the sole beneficiary under said policies, unless she executes the appropriate request therefor, or re-assigns them to Henry.

The parties will prepare findings of fact, conclusions of law and judgment in accordance with the above views.