## Lusk Estate.

Argued March 26, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John M. Crimmins*, with him *James A. Chambers*, and *Chambers, Chambers & O'Neill*, for appellant.

*Alvah M. Shumaker*, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 12, 1946:

This is an appeal from the decree of the Orphans' Court of Lawrence County overruling certain exceptions to the decree of distribution entered upon the adjudication upon audit of the first and final account of Lawrence Savings and Trust Company, successor trustee under the last will and testament of Bes L. Lusk, who died testate May 8, 1931. The question presented by this

appeal is: Does the testator's will clearly express an intent that his heirs who were to take at the termination of his testamentory trust are to be determined as of the time of that termination and not as of the time of his death? The court below held that the ninth paragraph of the testator's will meant that the distribution to be made at the time of the contingency specified was to be made to those who were the heirs at the date of the testator's death.

The ninth paragraph of the will reads as follows: "In case of the death of my son, Donald Augustus Lusk, before the death of his mother, and in case of the death of my grandson, Donald Campbell Lusk, before he reaches the age of thirty years, then I direct that my estate, real, personal and mixed, subject to the bequests hereinbefore given to Mary Helen Lusk, shall revert back to my original estate and be distributed under the intestate laws of the Commonwealth of Pennsylvania."

Donald Augustus Lusk died July 2, 1935 and his mother died on April 21, 1939. The testator's grandson, Donald Campbell Lusk, died on August 24, 1944, at the age of twenty-five years. Under these facts, the testator's entire estate "reverted back" (according to testator's directions), to his "original estate" for distribution "under the intestate laws of Pennsylvania".

The Act of June 29, 1923, P. L. 914, 21 P.S. 11, Sec. 1, declares that: "Hereafter when, in and by the provisions of any deed or will or other instrument in writing, property, either real or personal, or both, shall be donated, granted, devised, or bequeathed, either directly or in trust, for the use and benefit of any person, charity, or other use, for years or for life or upon condition, and which shall provide therein that, upon the termination of the estate for years or for life or upon breach of condition or other cause, the remainder over shall vest in the donor's or testator's heirs or next of kin or the persons thereunto entitled under the intestate laws, or other similar or equivalent phrase, the same shall be

construed as meaning the person or persons thereunto entitled at the time of the termination of the estate for years or for life or upon condition under the intestate laws of the Commonwealth as they shall exist at the time of such termination; and such phrases shall not be construed as meaning the person or persons who were the heirs or next of kin of the donor at the time the grant or donation was made or at the time the testator died: Provided, however, That nothing herein contained shall be construed to prevent any donor or testator from expressly or by necessary implication directing otherwise: And provided further, That the provisions of this act shall not apply to any case now pending."

The court below held that this testator did "direct otherwise". The court said that the testator "did not mean the tide of descent to move forward; he meant it to move back. He said, to his 'original estate', intending thereby to have his heirs determined as of the time when his estate [as an inheritance] had its origin, i.e. upon his own demise."

The verb "revert" ordinarily means "to return"; for example, when it is used in biology, it means to return to or toward some ancestral type; when it is used in chemistry, it means to return to a former state. This testator when he used the words "revert back to my original estate", clearly meant that when the time should come for the distribution of his estate, upon the happening of the contingencies specified, thereby causing the termination of the trust eseate, it should be distributed exactly as it would have been distributed in its "original" condition on the date of his death, that is, in the form it had before any testamentary estates were carved out of it.

In *Smith's Petition*, 291 Pa. 129, 137; 139 A. 832, this court said: "The legal signification of 'revert' is for property to go back to and lodge in a former owner, who parted with it by creating an estate in another, which has expired (Words and Phrases, 2d ed. 6213; Anderson

Law Dictionary, 899 . . ." In the instant case the property was to "go back" to the former "intact" condition and be distributed under the intestate laws exactly as it would have been distributed had it always been "intact", i.e. not "broken" by life estates which later ended on the happening of certain contingencies. The case of *Downing v. Grigsby,* 251 Ill. 568, 96 N.E. 513 involved the construction of a will in which a testator devised the homestead to his wife for life and then provided that "at her death to revert to my estate". The court said: ". . . The ordinary meaning of the words 'revert to my estate' is to return to the aggregate of all the property which I may leave at my death." In *Cochran v. Lee's Admr.,* Ky., 84 S.W. 337, it is stated that the word "revert" as used in a will providing that if "any of my children die without issue . . . his or her portion shall revert to my estate for the benefit of the living heirs", means to come back or return and that if any of the children die without issue, his or her portion shall return to the estate for the benefit of the living heirs.

The decision in *Bonsall's Est.,* 288 Pa. 39, 135 A. 724, cited by appellant, is not inconsistent with the decision reached in the instant case. There a testatrix in her will provided for "the creation of a trust of one-half of the residuary estate, the income from which was to be paid to a granddaughter, Florence Bonsall Judge, during life; upon her death the principal was to go to her child or children, but if she should die 'without leaving child or children surviving or children of deceased child or children, then and in such case the principal monies of said Trust Fund shall go to and vest in my lineal descendants according to the intestate laws of the State of Pennsylvania.' " The granddaughter named did die without leaving any children. This court held that "the lineal descendants" were to be ascertained as of the date of the death of the life beneficiary. The decision construed the will according to the Act of June 29, 1923, P. L. 914, for it was clear that the testatrix did not direct

otherwise. In the instant case, it is equally clear that the testator did direct otherwise.

It might be added (though it is not necessary to the decision of this case) that when Bes L. Lusk wrote his will on December 27, 1922, the applicable rule of construction was in a case of this character exactly as it is set forth in the opinion of this court in *McFillin's Est.,* 235 Pa. 175, 83 A. 620, as follows: "The thoroughly settled rule of construction is that where a testator directs that in a certain event after the expiration of a particular interest the estate shall go to his heirs or next of kin, or to the persons who would take under the intestate laws, he is to be understood as meaning the persons who would have so taken at the time of his death, and not at the time appointed for their taking, unless a different intent is plainly manifested in his will: *Buzby's Appeal,* 61 Pa. 111; *Stewart's Estate,* 147 Pa. 383; *Fitzpatrick's Estate,* 233 Pa. 33." See also *Barnard Est.,* 351 Pa. 313, 41 A. 578; and *Wood v. Schoen,* 216 Pa. 425, 66 A. 79. The lawyer who drafted the Lusk will undoubtedly knew that if his client wished the remainder of his estate, after the termination of the trust estates, upon the happening of the contingencies named, to vest in those who were his heirs at the time of the termination of the trust estate, it would be necessary to "plainly manifest" this intent in the will. No such intent is so manifested in the Lusk will. On the contrary, what *is* plainly manifested is the testator's intent that when the trust estate ended, his estate should be distributed exactly as it would have been on the date of his death, had there been no trust estates; it was on the date of his death that the testator's testamentary estate originated. The use of the phrase "original estate" in the ninth paragraph of his will, is of decisive significance in this case.

Neither the testator nor his attorney could, when this will was executed on December 27, 1922, have anticipated the passage of the Act of June 29, 1923, supra,

which changed the rule of construction (or the presumption) in this class of cases, but if they had done so and had known that the will then being executed would be governed by that Act (because of the maker's death subsequent to that Act), they could not have used language much more explicit than they did use, to express the testator's intent that upon the happening of the contingencies set forth in paragraph 9, the distribution of the estate should be made as of the date of the testator's death, that is, it should be made to those who at that date were his legal heirs under the intestate laws of this Commonwealth.

The appeal is dismissed at the appellant's cost.