### MACAULAY v. CENTRAL NATIONAL BANK.

1. In action by the beneficiaries under a policy of life insurance against a bank for the possession of the policy, conversations and transactions by the president and cashier of the bank with the assured, since deceased, are not incompetent testimony against the plaintiffs under section 400 of the Code.

2. Where a policy of life insurance was payable on the death of the assured to R., the wife of the assured, and to C. and J., his children, share and share alike, or their legal representatives, the parties named took a vested interest; and upon the death of J. in infancy, in the life-time of the assured, his share was divisible under the statute between his distributees, including his father, the assured.

3. The interest thus derived of the assured in this policy, might be verbally pledged by him as collateral security for the payment of a debt.

4. Matters not excepted to on Circuit are not properly before this court for review.

Before FRASER, J., Richland, April, 1886.

At the hearing of this appeal Judges Witherspoon and Norton sat in the places of the Chief Justice and Mr. Justice McGowan.

This was an action by Rachel T. Macaulay and Christina E. Macaulay against the Central National Bank.

The policy of insurance in this case recited that in considera-
tion of $282.70 to the company, "paid by Rachel T., wife of
Allan Macaulay—for the benefit of herself and Christina E. and
John T. Macaulay, his children, share and share alike," and of
the payment of a like sum for nine successive years, the life of
Allan Macaulay was insured. And the company agreed to pay,
upon the death of said Allan, the sum of $5,000 "to the said
Rachel T., Christina E., and J. T. Macaulay, share and share
alike, or their legal representatives." The policy was issued in
July, 1866, and John T. Macaulay died in December, 1866, at
the age of sixteen months.

The cashier and president of the bank testified that Allan
Macaulay had pledged this policy in 1884 to the defendant bank
as collateral security for over-drafts; that he frequently, in sub-
sequent conversations, recognized it as a pledge. This testimony
was objected to and excepted to by plaintiffs.

At the close of the testimony the judge said it was impossible
to proceed with the case, unless the administrator of Allan Mac-
aulay was made a party to this action. The following agreement
was then entered into:

"We hereby agree and consent, for the purposes of this trial,
that it shall proceed to its determination as if an administrator of
Allan J. Macaulay's estate had been duly appointed and qualified,
and entered upon the discharge of his duties, and that he had
been made a party defendant to this proceeding, and before the
court."

The judge charged the jury as follows: This is a suit for the
possession of a policy of insurance, taken out by Rachel Macau-
lay, wife, on the life of Allan Macaulay, for the benefit of herself
and two children, Christina E. and John T. Macaulay. The
plaintiffs only sue for $850. This is the balance that is held and
claimed by the defendant, to pay an overdraft due by Allan Mac-
aulay to the defendant, in amount $681.97. It is the duty of
the court to construe this policy. I charge you that when John
T., the infant, died he had a vested interest which went immedi-
ately to his distributees. No question being raised as to the
statute of distributions of New York, it must be governed by the
statute of our State. Under our statute the father took half of

the child's share, and the other half went to his sister, Christina E.  The mother took no part of the child's share.  The words "legal representatives" in this contract mean the executors or administrators.  When the child died, its father being a distributee was entitled to half of the child's share.

The judge also granted certain requests to charge of the defendant and refused certain requests of the plaintiffs, but so far as this court was called upon to review them, they are sufficiently stated in plaintiffs' grounds of appeal, which were as follows :

1st.  Because, it is respectfully submitted, that his honor erred in admitting in testimony the evidence of J. H. Sawyer in regard to transactions and conversations had with Allan Macaulay, during his life-time, concerning the policy sued on in this action.

2d  Because, it is respectfully submitted, that his honor erred in admitting the testimony of W. B. Stanley in regard to transactions and conversations had with Allan Macaulay during his life-time, concerning the policy sued on in this action. ·

3d.  That his honor erred in his charge to the jury, that is, "that when John T. Macaulay, the infant, died, he had a vested interest which went to his heirs-at-law ;" and the father being one of said infant's heirs was entitled to an interest of the child's share.

4th.  Because his honor refused to charge the jury, "that the child, John T. Macaulay, had an interest when this policy was taken out, but from the construction of this policy this interest, at his death, went to his mother and sister (the other beneficiaries named therein)."

5th.  Because his honor refused to charge the jury, "that neither Allan Macaulay nor his administrator had any interest in said policy."

6th.  Because his honor refused to charge the jury, "that if Allan Macaulay inherited any interest in the policy, that interest would not vest in him (so as to be assignable) until the appointment of an administrator of John T. Macaulay."

7th.  Because his honor refused to charge the jury, "that if Allan Macaulay inherited an interest in said policy, he could not assign that interest verbally, but it must be done in writing."

8th.  Because, from the nature of this policy, it being a fund

for the wife and children after the death of the husband and father, neither the father nor his administrator had any interest therein, but the interest of the infant that died went to the other beneficiaries named in said policy.

*Mr. John McMaster*, for appellants.

*Mr. John T. Sloan, jr.*, contra.

July 19, 1887. The opinion of the court was delivered by

MR. JUSTICE WITHERSPOON. On July 27, 1866, the New York Life Insurance Company, in consideration of a certain amount of premium then paid by Rachel T. Macaulay, and the further payment of a similar amount on the first day of July of each succeeding year for nine years, issued a policy for $5,000, upon the life of Allan Macaulay, husband of the said Rachel T., in which policy said company agreed to pay, upon the death of the said Allan Macaulay, the sum assured, "to the said Rachel T., Christina E., and J. T. Macaulay, share and share alike, or their legal representatives." Christina E. and J. T. Macaulay, named in said policy, were children of Allan and Rachel T. Macaulay. J. T. Macaulay (hereinafter referred to as John T. Macaulay), one of said beneficiaries named in said policy, died in infancy during the month of December, 1866, after said policy was issued. The last premium due on said policy was paid in 1876.

Allan Macaulay was a member of the firm of Stenhouse & Macaulay, cotton brokers, and the defendant furnished said firm with money to buy cotton. It appears that said firm owed the defendant by over-drafts October 3, 1884, the sum of $687.01. Allan Macaulay died December, 1884. Prior to his death, Allan Macaulay deposited the policy of insurance aforesaid with the defendant, as defendant claims, under an agreement with defendant, that said insurance policy should be held by defendant as a pledge for the payment of the over-drafts due by Stenhouse & Macaulay as aforesaid. After the death of Allan Macaulay the plaintiffs demanded the policy, and defendant refused to deliver the same until the indebtedness of Stenhouse & Macaulay by over-drafts, as aforesaid, was paid to said defendant. The plain-

tiffs instituted the above entitled action to recover the possession of the life insurance policy aforesaid, together with damages for the alleged unlawful withholding of the same by defendant.

The defendant interposed a demurrer to the complaint: I. Because it appears upon the face of the complaint that the complaint does not state facts sufficient to constitute a cause of action. II. Because there is a defect of parties plaintiffs, in the omission of the names of the legal representatives of Allan Macaulay and John T. Macaulay. The demurrer was overruled. The defendant was allowed to answer, and, under an order of court, defendant turned over the insurance policy to plaintiffs, and plaintiffs deposited $850 of the proceeds thereof with the clerk of court, to await a final decision of the case, as required by said order. No exception was taken to the order overruling defendant's demurrer.

Under these circumstances, and at a subsequent term of court, the cause came on to be heard by Judge Fraser and a jury. The jury rendered a verdict for plaintiffs for $360.53. After referring to the former order in the cause requiring the deposit by plaintiffs of $850 with the clerk, the presiding judge passed an order directing the clerk to pay defendant $489.47, and to plaintiffs the balance of the fund in his hands, on account of the judgment to be entered up in this case. From this order and the rulings and charge of the Circuit Judge the plaintiffs appeal.

The first and second exceptions allege that the Circuit Judge erred in admitting the testimony of W. B. Stanley, president, and J. H. Sawyer, cashier, of the Central National Bank, the defendant, as to transactions and communications with Allan Macaulay, deceased, with reference to the policy sued upon. These exceptions are taken and are to be considered under section 400 of the Code. Plaintiffs are not prosecuting this action in any of the representative capacities referred to in said section, and we fail to see any ground upon which said exceptions can be sustained.

The third exception alleges that his honor erred in charging the jury, "that when John T. Macaulay, the infant, died he had a vested interest which went to his heirs-at-law, and the father being one of said infant's heirs, was entitled to an interest of the

child's share." This exception raises the *real issue* between the parties to this action, to wit: the effect of the death of the infant beneficiary, John T. Macaulay, on his share or interest in the policy; that is to say, whether such interest *survived* to the other beneficiaries, as contended by plaintiffs, or went to the deceased distributees, as contended by defendant. In construing the policy under consideration, the Circuit Judge charged the jury in substance, that the policy when delivered, and the money to become due under it, belonged to the beneficiaries named in the policy, and the interests of said beneficiaries then became vested, subject to be defeated only by the non-payment of future premiums; that when John T., the infant, died he had a vested interest, which went immediately to his distributees; that the words "legal representatives" in the policy meant executors and administrators. The judge left to the jury to decide, as matter of fact, whether or not Allan Macaulay assigned, pledged, or delivered the policy to the defendant, to secure the over-drafts due said defendant by Stenhouse & Macaulay.

In support of the third exception, appellants' counsel cites the case of *Robinson* v. *Duvall*, decided by the Court of Appeals of Kentucky in 1881; see *The Reporter*, vol. XII., page 466. In that case the sum assured, under the terms of the policy, was payable to the wife and children, or their legal representatives. The court held in that case that upon the death of a beneficiary, his share passed to the surviving beneficiaries. We do not think that the case cited and relied upon by appellants is applicable, as there is a material difference between the provisions of the policy in that case for the beneficiaries, and the policy under consideration. The policy under consideration provides for the payment of the sum assured to certain persons by name, "share and share alike, or their legal representatives." We think that this provision in the policy, under consideration, excludes the theory of survivorship among the beneficiaries, contended for by appellants, and that the Circuit Judge did not err in his charge to the jury as alleged in the third exception.

Plaintiffs requested the judge to charge the jury to the effect, that neither Allan Macaulay nor his administrator could take any interest under the terms of the policy, and that the interest

of the infant, John T., at his death, went to plaintiffs, the other beneficiaries named in said policy. The fourth, fifth, sixth, and eighth exceptions allege that the judge erred in refusing to charge as requested. The seventh exception alleges that the judge erred in refusing to charge as requested, "that if. Allan Macaulay inherited an interest in said policy, he could not assign that interest verbally, but it must be done in writing." This exception cannot be sustained. We do not think that the Circuit Judge erred, either in his charge, or in refusing to charge the jury as alleged in plaintiffs' exceptions. The matter of administration upon the estate of the deceased beneficiary, John T. Macaulay, referred to in appellants' argument, was disposed of in the Circuit Court, without exception, and cannot be considered by this court.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.