WHITEHILL & SON v. DACUS & JORDAN.

STEVENSON, ALEXANDER & CO. v. SAME.

BUCK & MATHIAS v. SAME.

HYNDS MFG. CO. v. SAME.

MYERS, REINHARD & CO. v. SAME.

ASSIGNMENT—RELEASE—EQUITY—DEBTOR AND CREDITOR.—Where a creditor, in good faith, serves notice on the assignee of his debtor that he will accept the terms of the assignment, and offers a release, and afterwards files the release, which is decided to have been filed too late, and he is thereby deprived of the benefit, under the assignment, of a releasing creditor, he may afterwards recover on his original demand, and have his release delivered to him for cancellation. MR. CHIEF JUSTICE MCIVER *dissenting*.

Before BENET, J., Greenville, December, 1895. Affirmed.

The facts are fully stated in the opinion.

*Messrs. Haynesworth & Parker*, for appellant, cite: 39 S. C., 498; 7 R. I., 470; 75 Am. Dec., 248; 15 S. E. R., 199; 59 Fed. Rep., 999.

*Messrs. Perry & Heyward*, contra, cite: 39 S. C., 498; 7 Cranch, 19; 29 Barb., 383.

May 1, 1897. The opinion of the Court was delivered by MR. JUSTICE JONES. The five cases above entitled were

heard together, and involved the same question. The suits were begun in January, 1894, to recover amounts alleged to be due on certain notes, or other money demands, by the firm of Dacus & Jordan to the respective plaintiffs. The defendants answered, setting up as a defense that on the 27th day of November, 1891, the firm of Dacus & Jordan made a general assignment for the benefit of their creditors, and that thereafter the plaintiffs duly accepted the terms of the said assignment, and executed and delivered a release under seal, and thereby discharged the said Dacus & Jordan from all liability upon their respective claims. The answers further allege that thereafter an action was commenced in the Court of Common Pleas for Greenville County by Armstrong, Cator & Co., as plaintiffs, against Hurst, Purnell & Co., J. C. Rogers, and S. L. Stroud, as assignee of Dacus & Jordan and agent for creditors, for the purpose, among other things, of marshaling the assets of the estate of Dacus & Jordan, and determining the rights and priorities of the creditors thereof; that in said action the creditors of Dacus & Jordan were required to establish their claims; that the plaintiffs appeared therein and duly proved their claims and the execution of said release; and that it was adjudged in that action that the plaintiffs had executed a release of the said claims against Dacus & Jordan, discharging them from all liability thereon. At the following term, plaintiffs obtained an order allowing them to make a reply to the answers of the defendants, and, pursuant to said order, alleged, in reply, that the releases referred to in the answers were given under the following circumstances: On the 27th day of November, 1891, defendants made an assignment for the benefit of creditors, which contained this provision: "First, to pay any debts due the public and the debts of such creditors of the said Dacus & Jordan as may, within sixty days from the date hereof, accept the terms of the said assignment and execute a release of their claims against the said Dacus & Jordan, and that the balance, after paying the said debts, be distributed

among the other creditors of the said Dacus & Jordan *pro rata*, without preference or priority." That on the six-tieth day after the execution of the said assignment the plaintiffs served upon the assignee, as has been usual in such cases in this State, notice that they accepted the terms of the assignment, and offered releases as required therein, and in a few days subsequent thereto filed with the assignee the releases referred to in the answer, a copy of which is as follows: "In consideration of the amounts to be received by us, and of our having priority over non-accepting cred-itors in the distribution of the assets of the firm of Dacus & Jordan, we hereby release the said Dacus & Jordan from further liability on account of our claims against them." Plaintiffs further allege, that the plaintiffs claimed that the said releases had been filed within the time fixed by the said assignment, and the condition of the releases being that they should have priority over non-releasing creditors, they were entitled to such priority. This, however, was resisted by the defendants and by creditors who had not filed releases, and, upon argument of the question, the Su-preme Court held that the releases had not been filed in time, and that these plaintiffs were not entitled to priority. Plaintiffs, therefore, submit that the consideration thereof having failed, said releases are null and void, and should be returned to the plaintiffs. The reply concluded with a prayer that defendants be required to deliver up the said releases to the plaintiffs, and that plaintiffs have judgment against the defendants according to the prayer of the com-plaint.

Thus the actions became, in effect, equitable actions to cancel the releases and for judgment for amounts due on the original demands. The causes were heard by Judge Benet on the pleadings, all the allegations of which were mutually admitted, except it was agreed that the defendants were not parties to the action of *Armstrong* v. *Hurst*, 39 S. C., 498, referred to in the answers, but that the assignee of Dacus & Jordan and the agent for creditors were par-

ties thereto. Upon these facts Judge Benet adjudged that plaintiffs were entitled to enter judgment against the defendants for the sums claimed, less the admitted credits; and further ordered, that defendants deliver up for cancellation the said releases, alleged to have been filed by plaintiffs' counsel with the assignee of defendants. From the judgment entered the defendants appeal.

The only question presented is, whether the said releases are binding and valid to prevent recovery on the original indebtedness. The appellants contend that the plaintiffs seek to avoid the effect of these releases, not on the ground that there was any mistake of law or of fact, or that they were induced to make them through any fraud of the defendants, but simply upon the ground of failure to obtain what they expected. But we do not think this is a correct view of plaintiffs' case. The judgment of the Circuit Court may be vindicated from either of two points of view. First, the releases in question were not absolute and unconditional discharges of the indebtedness due by defendants. Correctly construed, according to the manifest intention of the parties, the debts were released upon condition that the releasing creditors have priority over non-accepting creditors in the distribution of the assets of Dacus & Jordan. It is true, the paper reads, "in consideration * * * of our having priority over non-accepting creditors, * * * we hereby release, &c." But we construe this to mean, "in consideration of our having, or being allowed to have, the right of priority, &c.;" and it seems clear the parties understood the release to be conditioned on the right of priority. In the third paragraph of the paper called the reply of plaintiffs, it is distinctly alleged that the "plaintiffs claimed that the said release had been filed within the time fixed by the said assignment, and *the condition of the release being that they should have priority over non-releasing creditors*, they were entitled to priority." This shows plaintiffs' view of the release as one on condition, and the defendants admit the allegations in the reply to be true, and in so far as the

statement italicized above may be regarded as a statement of fact, it is admitted as true. It having been decided in *Armstrong* v. *Hurst, supra,* that the releases not having been filed in time, the plaintiffs did not come within the class of creditors who had accepted and released within the prescribed time, hence they had no right of priority over non-accepting creditors, it follows that the condition on which the releases were made having failed, the releases must be held inoperative.

In the second place, if the above view is untenable, the judgment below should be affirmed, on the ground that the releases were executed and accepted under a mutual mistake in law. Whatever may be the rule elsewhere, it is settled in this State that a court of equity has jurisdiction to set aside a contract on the ground of mistake in law. *Lowndes* v. *Chisolm,* 2 McC. Eq., *455; *Lawrence* v. *Beaubien,* 2 Bail., 623; *Brock* v. *O'Dell,* 44 S. C., 34. Assuming that the parties did not intend the releases as conditioned on the right of priority over non-releasing creditors, then, granting both to have acted in good faith, it is manifest that they acted under a mutual misconception of their rights, and of the effect of their agreement. It cannot be said that Dacus & Jordan were passive in this matter of the release. The release was a contract between them and the plaintiffs, which was delivered to the assignee as the designated agent of Dacus & Jordan in this matter. In the absence of anything to the contrary, Dacus & Jordan must be held to have accepted and agreed to the release according to its terms when it was delivered to their agent. Plaintiffs did not intend to release in any other way than as a creditor releasing within the time prescribed, and defendants, if they were not desirous of undue advantage, did not accept the release in any other way than as a release entitling the creditor to priority in the distribution of the firm assets.

It may be said that the mutual mistake was partly one of fact, both supposing that the releases were filed within

the time prescribed in the assignment.    This was plaintiff's
contention in the case of *Armstrong* v. *Hurst*, *supra*—they
contending that the notice of acceptance and offer to release
being made within the sixty days, that the filing of the
former releases ten days after by the creditors themselves,
had the effect of ratifying and confirming the previous
action of their attorneys, so as to give such action effect
from the day when it was taken.    Defendants, doubtless,
thought the acceptance and release were filed in time, for
they allege in the second paragraph of their answer that
"the plaintiffs *duly* accepted the terms of the said assign-
ment, and executed and delivered a release, &c."    Under
the ruling of this Court in Armstrong *v.* Hurst, the plain-
tiffs received a small dividend from the assigned estate, as
non-releasing creditors within the time prescribed, and for
this payment due allowance was made in the Circuit decree
in this case.    They did not receive this dividend by virtue
of the releases, but would have been entitled to it without
any attempt to release.    If plaintiffs had no right of priority
under the releases, there was a total failure of consideration,
contrary to the intent of the parties.    It is as if the defend-
ants had paid the plaintiffs' debt in counterfeit money, both
parties believing the money to be good.    The discharge of
the debt under such circumstances is a nullity.

It should be borne in mind that this is not a case wherein
a releasing creditor is seeking to set aside his contract of
release on the ground that he received less than he ex-
pected.    Had the releasing creditors in this case received
what they bargained for, the right of priority over non-re-
leasing creditors, they would be held to their releases, fairly
made, whether they received little or nothing as a result of
that priority.    But this is a case of mutual mistake, and
such a mistake as a court of equity ought to correct.    The
mistake of the parties in this case can be corrected without
injury to the defendants.    The assigned estate has been
distributed according to the terms of their assignment, and
they have given nothing as a consideration for the discharge

of these honest debts. They are restored completely to their status at the time of the attempted releases.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE McIVER, *dissenting*. The facts are so fully stated in the leading opinion of Mr. Justice Jones, that I do not deem it necessary to restate them here, as it is conceded that all of the facts material to the issue and all the principles of law involved are the same in all of the cases, I shall, for convenience of phraseology, speak of them as one case, intending that the view which I shall present shall·be applicable to each of the cases stated in the title.

The case is treated by Mr. Justice Jones as a case in equity and not as a case at law, though this may well be questioned. For the plaintiffs, in bringing their action, selected their own forum, and the complaint unquestionably shows that the forum selected was the law court, as the allegations in the complaint are simply those appropriate to an action on an ordinary money demand to recover the amount mentioned in the notes set out in the complaint, and there is not a single allegation which would impart to the action any feature of equitable cognizance. It is only when we look into the so-called reply that any allegation can be found upon which a claim to equitable relief could be founded. Whether this paper, called a reply, can have the effect of converting the action into an action for equitable relief, I shall not stop to inquire, as, according to my view of the case, it is immaterial whether the action be regarded as an action at law or in equity. It is very manifest that the whole case turns upon the inquiry, whether the release, the execution of which is admitted by the plaintiffs, operates as a bar to the action brought to recover the balance alleged to be due on the notes set out in the complaint. There can be no doubt that a creditor may discharge his debtor from further liability for either a part or the whole of his debt, by executing a release of the debt *under seal,* even without any consideration, for the seal im-

ports a consideration. *Hope* v. *Cavis*, 11 Rich., 135; *Carter* v. *King*, 11 Rich., 125; in which last named case certain words, "hastily used" (as it is said), implying the contrary, in *Matlock* v. *Gibson*, 8 Rich., 439, are explained and corrected. Now, in this case, there can be no doubt that this release was *under seal*, for it is so distinctly alleged in the answer, and in the admitted facts upon which the case was heard below, it is stated that the allegations of the complaint, answer, and reply are admitted, with certain exceptions, which do not include this matter of the seal. The fact that the so-called copy of the release, as set out in the reply, does not show a seal, certainly is not sufficient to overthrow the admission of the allegation in the answer that the release was under seal, for such copy is manifestly incomplete, as it contains neither the date nor the signature, the very place where the seal would appear. Taking this release to be an instrument under seal, it becomes important to inquire, whether the objection of plaintiffs is based upon the ground of *want of consideration* or upon the ground of *failure of consideration;* for, as is said in *Carter* v. *King*, *supra*, "there is a great difference between the objection to an obligation that the consideration which has really moved it has failed, and the objection that it never had a consideration. If want of consideration appeared, the inference would be that for that reason it was put into such form that the deliberation implied from the seal should stand in the room of consideration. How could any deed of gift or covenant to stand seized (to uses) ever prevail, if the same want of consideration which renders a parol promise void would avail to defeat a specialty? If, therefore, the release here in question never had a consideration, it could not be defeated upon that ground; but if it was originally founded on a valid consideration which has subsequently failed, then it might be attacked upon that ground. It seems to me that the real ground of attack is, that the release never had any consideration, and not that there has been a failure of the consideration which originally existed, for none ever

did. exist.   If the release does not now .secure priority, it
never did, for the law in this respect is the same to-day as
it was when the release was executed.   It cannot, there-
fore, be said that the consideration of the release has *failed*
by reason of anything which has occurred since it was exe-
cuted, but it must be said the release never had any con-
sideration, and, as has been shown, it cannot be attacked.
It is no doubt true that the plaintiffs supposed, at the time
of the execution of the release, that they would thereby ac-
quire a priority over other creditors in the distribution of
the assets of the assigned estate of Dacus & Jordan, but
that supposition was based upon an erroneous construction
of the law by the plaintiffs, for which Dacus & Jordan were
in no wise responsible.   Dacus & Jordan, being embar-
rassed, surrendered their entire estate for the benefit of their
creditors, and the plaintiffs, with a view to acquire priority
over other creditors, executed the release whereby Dacus
& Jordan were discharged from further liability to the
plaintiffs; and if the plaintiffs have been disappointed in
realizing what they expected, by reason of their own erro-
neous judgment of what was the law, I am ·unable to see
any reason why the consequences of such erroneous judg-
ment should be visited upon Dacus & Jordan.   It is con-
ceded that Dacus & Jordan were not parties to the action
of *Armstrong* v. *Hurst*, 39 S. C., 498, in which it was ad-
judged that the release executed by the plaintiffs was in-
sufficient to effect the purpose which the plaintiffs expected;
and it does not appear that Dacus & Jordan have ever, in
any way, either by word or act, claimed that the release.
was insufficient.   That was a matter with which Dacus &
Jordan had nothing whatever to do, and in which the plain-
tiffs acted solely upon their own responsibility, and they
should be held to the consequences of their own incautious
act.

It is said that the plaintiffs' allegation (as it is called) in
the third paragraph of their reply having been admitted by
the defendants, it must be considered that the defendants

have admitted that the release was executed upon the condition that the plaintiffs would thereby acquire priority over non-releasing creditors; and the argument is that such condition not having been fulfilled, the release became inoperative. The paragraph of the reply referred to reads as follows: "That these plaintiffs claimed that the said release had been filed within the time fixed by the said assignment, and the condition of the release being that they should have priority over non-releasing creditors, they were entitled to such priority. This, however, was resisted by the defendants, and by creditors who had not filed releases; and upon argument of the question, the Supreme Court held that the release had not been filed in time, and that these plaintiffs were not entitled to priority." In the first place, it is manifest from the terms of this paragraph that the plaintiffs were speaking of what occurred in the case of *Armstrong* v. *Hurst*, to which case it is admitted that the defendants herein were not parties, and, therefore, had no opportunity of either admitting or denying the allegations therein contained. Besides, I do not understand that a defendant, when he admits the *facts* alleged in a complaint, has ever been regarded as thereby admitting what is "*claimed*" to be the legal result of such facts.

In addition to this, the plaintiffs, in the next preceding paragraph of the reply, undertook to set forth a copy, or rather a partial copy, of the release, and there is nothing which implies that it was executed upon any *condition*. It only purports to set forth what the plaintiffs regarded as the motive for its execution, for it reads: "In consideration of the amounts to be received by us, and of our having priority over non-accepting creditors in the distribution of the assets of the firm of Dacus & Jordan, we hereby release the said Dacus & Jordan from further liability on account of our claims against them." This language, so far as relates to the priority over non-accepting creditors, only amounts to an assertion of what the plaintiffs supposed would be the effect of the release, and I am unable to see any warrant

for the change in the phraseology of this paper, such as that suggested in the opinion of Mr. Justice Jones.

Again, it is urged that the release should be declared inoperative, upon the ground that it was executed and accepted under a mutual mistake in law. I do not see the slightest ground for supposing that there was any mistake, either of law or fact, upon the part of Dacus & Jordan. After they had executed the deed of assignment and surrendered their property to their assignee, they had nothing further to do with the matter. It does not appear that they had anything whatever to do with the execution of the release—indeed, it does not appear when they first learned that such a paper had been executed.

It is not pretended, and could not be, that there was any mistake of *fact* on the part of the plaintiffs, and I do not think there was any such mistake of law on their part as would justify a court of equity in relieving them. As is said in 2 Pom. Eq. Jur., sec. 843: "The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either offensive or affirmative relief. If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or other inequitable conduct, in the transaction, the party who knew or had an opportunity to know the contents of an agreement or other instrument, cannot defeat its performance, or obtain its cancellation or reformation, because he mistook the legal meaning and effect of the whole or any of its provisions." The doctrine thus laid down by this distinguished text-writer has the support of the highest authority in this country—*Hunt* v. *Rousmaniere's Adm.*, I. Peters, 1; and has also been approved by authoritative decisions in this State—*Keitt* v. *Andrews*, 4 Rich. Eq., 349; *Munro* v. *Long*, 35 S. C., 354. Now the case under consideration manifestly falls within this well settled rule. There is no allegation and certainly no evidence of any "fraud, concealment, misrepresentation,

undue influence, violation of confidence reposed or of other inequitable conduct" on the part of Dacus & Jordan, whereby the plaintiffs were induced to execute the release in question. On the contrary, the plaintiffs undoubtedly knew, or certainly had the means of knowing, all of the facts; and their error, for which no one but themselves is responsible, was that they "mistook the legal meaning and effect" of the release. As they construed that paper, they were entitled to priority over the non-accepting creditors, and they seriously and earnestly contended for the correctness of their construction in the case of *Armstrong* v. *Hurst*, *supra*, and it is only when they learned from the decision of this Court, that they had misconstrued the legal meaning and effect of the release, they turn around and claim that the release is to have no effect at all. To use the language of Dargan, Ch., in *Keitt* v. *Andrews*, *supra*, "Such a misconstruction is rather an error of the judgment than a mistake either of the law or of fact," from which they are not entitled to relief.

The views which I have adopted will find support in the cases cited by appellants: *Shepard* v. *Rhodes*, 7 R. I., 470, reported also in 84 Am. Dec., 573; *Baker* v. *Baker*, 75 Am. Dec., 245, a New Jersey case, and in *Claflin* v. *Dacus*, 59 Fed. Rep., 998, where the same question was presented in a case between other creditors and these defendants, Dacus & Jordan, where it was held by his Honor, Judge Simonton, that the release was a bar to the action. It is true, that the actions in the three cases last cited seem to have been actions at law; but having shown that the release cannot be avoided in equity, these three cases are cited to show that at law the release is a bar to the action. The case of *Western Bank* v. *Sherwood*, 29 Barb., 383, cited by counsel for respondents, simply decides the admitted doctrine that, since the Code, a defendant may avail himself of any defense, either legal or equitable, which he may have to the claim sued on, even though the action be prosecuted by an assignee of an unnegotiable instrument, inasmuch as he takes subject to all the equities existing between the original

parties to the contract at the time of the assignment. I am, therefore, unable to perceive how that case applies to the real question in the case under consideration.

For these reasons, I am unable to concur in the conclusion reached by Mr. Justice Jones, and, on the contrary, think that the judgment of the Circuit Court should be reversed and the complaint dismissed.