**COOK et al. v. COMMERCIAL CASUALTY INS. CO. et al.**

No. 5542.

Circuit Court of Appeals, Fourth Circuit.

March 6, 1947.

M. L. Meadors, of Florence, S. C. (E. Osborne Ayscue, of Monroe, N.C., on the brief), for appellants and cross-appellees.

Jack Wright, of Florence, S. C. (Royall & Wright, of Florence, S. C., on the brief), for appellee and cross-appellant.

R. D. Epps, of Conway, S. C. (J. Reuben Long, of Conway, S. C., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is a suit on the bond given by the administratrix of a deceased seaman, one William A. Cook, to recover as distributive shares of his estate, insurance money in the sum of $5,150 paid to the administratrix.

Plaintiffs are the widow and minor children of Cook and it is now admitted that they are the proper distributees of his estate. Mrs. Lena C. Hucks, his sister, qualified as administratrix of his estate and collected the insurance money which she distributed to herself and Cook's mother, who in the absence of widow and children, would have been the proper distributees. The surety on the original bond of the administratrix was made defendant, and on its motion the administratrix, the mother and sureties who had signed a subsequent bond were made third party defendants. The principal defense was that Mrs. Hucks was entitled to the insurance money by reason of an assignment which Cook had executed to her, and that consequently the distributees of the estate were not entitled to any part thereof. An additional defense was that Mrs. Hucks had a valid claim against the estate for the support of Cook's mother. The District Judge found in favor of the defendants on both of these defenses and the plaintiffs have appealed. In the view that we take of the case only two questions need be considered by us: (1) Whether there was a valid assignment of the insurance to Mrs. Hucks, and (2) whether what was done by her in collecting and disbursing the insurance money as administratrix precludes her from asserting now that it was her individual property.

The insurance in favor of Cook was effected by a contract of insurance issued to the owner of the steamship Norlavore, providing $5,000 insurance on the life and $150 on the personal effects of each member of the crew, and covering a voyage from Baltimore to South America, commenced on February 23, 1942. The ship with all on board was lost while on the voyage. The insurance contract provides:

"Payees. All payments provided for in this policy will be made only to the master, officer, or member of the crew concerned, except that a payment for loss of life will be made to the beneficiary designated by the master, officer or seaman at the time he signs on. The appearance of the name of such a beneficiary upon a copy of the signed beneficiary list or individual beneficiary designation, attested by the ship-owner, shall be conclusive evidence of such desig-nation and payment to such named beneficiary shall thereby entirely discharge assurer's liability under this policy with respect to such loss. In the absence of such designation of named beneficiary, payment will be made as follows: If the deceased master, officer or member of the crew concerned appears upon the articles as an American citizen, payment will be made to the executor, or administrator in the United States of said master, officer or member of the crew for distribution in the same manner as his estate."

Cook designated no beneficiary of the insurance at the time he signed on; and in the absence of assignment it was payable to his personal representative under the above provision.

The instrument relied on as an assignment was executed by the seaman before a Notary Public, and is in the following language:

"State of South Carolina,
"County of Horry.

"Personally appeared before me William Alton Cook, who is serving in the Merchant Marine Service as Messman who holds Certificate service serial No. 328573 certificate No. Z259212, Should I be killed or lost in any manner, I want my insurance paid to Mrs. N. C. Hucks of Aynor, S. C., R. F. D. No. 1,

"s—William Alton Cook—
"Sworn to before me this 13th day of Feb., 1942.

"—s—Geo. M. Huggins
"Notary Public, S. C.
"(Notarial Seal)"

The Mrs. N. C. Hucks, mentioned in the assignment, is the sister, Mrs. Lena C. Hucks, who qualified as administratrix. The evidence shows that, under agreement that Cook would compensate her, she had supported their mother for a number of years, and that he made this assignment for the purpose of carrying out his obligation and further protecting his mother. He seems to have recognized no obligation with respect to his wife and children, with whom he lived only intermittently, if at all; and, in signing on for the South American voyage a few days later, he gave the name and address of his mother, and not that of

his wife, when asked for the name and address of wife or next of kin.

When Mrs. Hucks heard of Cook's death, she made demand for the insurance money and furnished to counsel for the insurers a copy of the assignment which he had executed. She was advised by them that the assignment did not satisfy the requirements of the policy with reference to the designation of beneficiary and that it would be necessary to arrange for letters of administration. She thereupon qualified as administratrix of Cook's estate and in that capacity collected the insurance. After paying therefrom a few small debts of the estate, she divided the remainder of the insurance money between herself and her mother as the next of kin of decedent and distributees of his estate under the law of South Carolina, and filed final account in the probate court showing that this had been done. She testified and the judge below found in his opinion, that in all this she was acting in good faith, believing that decedent was unmarried and that she and her mother were entitled to his estate as sole distributees.

We think there can be no question but that the effect of the assignment was to transfer to Mrs. Hucks the right to the insurance money. The question is not one of changing the designated beneficiary of an insurance policy, but of the assignment by an insured of his rights under a policy payable to his estate. It is well settled that such rights may be assigned and that the assignment operates to transfer to the assignee all right in the insurance money payable in case of death. New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997; Russell v. Grigsby, 6 Cir., 168 F. 577; Id., 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133, 36 L.R.A.,N.S., 642, Ann.Cas.1913B, 863; Webster v. State Mutual Life Assur. Co., D.C., 50 F. Supp. 11; Id., 9 Cir., 148 F.2d 315; Prudential Ins. Co. v. Young, 14 Ind.App. 560, 43 N.E. 253, 56 Am.St.Rep. 319; Robinson v. Hurst, 78 Md. 59, 26 A. 956, 20 L.R.A. 761, 44 Am.St.Rep. 266; New York Life Ins. Co. v. Flack, 3 Md. 341, 56 Am.Dec. 742; St. John v. American Mutual Life Ins. Co., 13 N.Y. 31, 64 Am.Dec. 529 and note; Palmer v. Merrill, 6 Cush, Mass.,

282, 52 Am.Dec. 782; Southern Mutual Life Ins. Ass'n v. Durdin, 132 Ga. 495, 64 S.E. 264, 131 Am.St.Rep. 210; note 87 Am.St. Rep. at page 502. Pertinent here is what was said in Prudential Ins. Co. v. Young, supra, as follows:

"The policies sued on did not designate a beneficiary in whom the right to benefits under the policy vested. The insured had neither an executor nor an administrator, and could not have until after his death. * * * It is plain that the beneficiary designated was the insured's estate, and was the property of his estate; and, if he had died without changing the beneficiary, it could have been collected as part of the assets of the estate, and used to pay his debts. In fact, the policies were made payable to the insured himself, and the rights thereunder accrued to him; and, as his property, he had a right to sell, assign, or transfer them the same as any other chose in action, subject, however, to the restriction which the law places around the transfer of policies of insurance on the lives of persons."

There is nothing to indicate that the rule in South Carolina is in any way different from that which prevails elsewhere. On the contrary, assignments of policies payable to the estates of persons insured have been recognized in that state as valid and binding in cases involving other points arising out of the assignments. See Westbury v. Simmons, 57 S.C. 467, 35 S.E. 764; New York Life Ins. Co. v. Brown, 4 Cir., 99 F.2d 199.

Two minor matters should be noted in connection with the instrument relied on as an assignment. One is that the language used is not the technical language usually employed to transfer rights under a policy. This, however, makes no difference. It clearly evidences an intent to give Mrs. Hucks the right to any moneys payable under the policy, and "any language, however informal, if it shows the intention of the owner of the chose in action to transfer it, will be sufficient to vest the property in the assignee." 4 Am.Jur. 287; Southern Mutual Life Ins. Ass'n v. Durdin, 132 Ga. 495, 64 S.E. 264, 131 Am.St.Rep. 210 and note. In South Carolina the assignment need not even be in writing. Macauley v.

Central Nat. Bk., 27 S.C. 215, 3 S.E. 193; Barron v. Williams, 58 S.C. 280, 36 S.E. 561, 79 Am.St.Rep. 840. The other matter to be noted is that the instrument of assignment was executed before the insured signed on for the voyage and consequently before the insurance became effective. Insured, however, was enlisted in the Merchant Marine of the United States and presumably knew that he would be covered by insurance effected for his benefit with respect to voyages that he might be called upon to make. The instrument which he signed was intended to vest the right to any such insurance in Mrs. Hucks and must be upheld as an equitable assignment of the insurance subsequently effected. The assignment of "things not in esse * * * is recognized and takes effect when the thing assigned comes into existence, providing it was fairly made, is supported by a sufficient consideration, and is not contrary to public policy." 4 Am.Jur. 232; Hinkle v. Wanzer, 17 How. 353, 368, 15 L.Ed. 173; Kimball v. Farmers' & M. Bank, 138 N.Y. 500, 34 N.E. 337, 20 L.R.A. 497.

■■ With respect to the second question, the ordinary rule unquestionably is that a personal representative who takes possession of property in his fiduciary capacity is estopped from asserting an adverse title thereto. 33 C.J.S., Executors and Administrators, § 128, p. 1084; 21 Am. Jur. 473; Bigelow on Estoppel 6 ed. p. 599; note 110 A.L.R. 511, 604; Blake v. Jones, Bailey, Eq. 141, 8 S.C.Eq. 141, 21 Am. Dec. 530; Manigault v. Holmes, Bailey, Eq. 283, 8 S.C.Eq. 283; Parnelle v. Cavanaugh, 191 Ga. 464, 12 S.E.2d 877. We do not think that such estoppel arises here, however, for the reason that the action of Mrs. Hucks in collecting and disbursing the insurance money as property of the estate was manifestly due to mistake. She at first claimed the insurance as her own, but was advised by one of the leading law firms of the country, representing the insurer, that the instrument on which she relied in asserting her right was not sufficient and that an administration would be necessary for its collection. She acted on this mistaken advice; and because of her mistake the estoppel which would otherwise arise from her action may not be invoked

against her. What decisions there are on the subject so hold. See McWilliams v. Ramsay, 23 Ala. 813; Matheson v. Matheson, 139 Iowa 511, 117 N.W. 755, 18 L.R. A.,N.S., 1167; Filley v. Murphy, 30 Wash. 1, 70 P. 107; Bell v. Nye, 255 Ill. 283, 99 N.E. 610, 42 L.R.A.,N.S., 1127; Bigelow on ·Estoppel, 6th Ed., 600.

The mistake of the administratrix here was not a pure mistake of law, but a mistake as to her rights in property, coupled with a mistake of fact as to who were the proper distributees of the estate. We have no doubt that such mistake, in the absence of prejudice or change of position resulting therefrom, requires that equity do not enforce the estoppel that would otherwise arise. Pomeroy's Equity Jurisprudence, 2d Ed., vol. 2, sec. 849; Lawrence v. Beaubien, 2 Bailey, S.C., 623, 23 Am.Dec. 155; Lowndes v. Chisolm, 2 McCord Eq.,S.C., 455, 16 Am.Dec. 667; Brock v. O'Dell, 44 S.C. 22, 34, 21 S.E. 976; Whitehill v. Dacus, 49 S.C. 273, 27 S.E. 200; Hutchison v. Fuller, 67 S.C. 280, 45 S.E. 164; note 55 Am.St.Rep. 503-504. See also our decisions in Clarksburg Trust Co. v. Commercial Casualty Ins. Co., 4 Cir., 40 F.2d 626, and Commercial Casualty Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928.

■■ In the case at bar, it is perfectly clear that plaintiffs have not been prejudiced or caused to change their position in any way by what Mrs. Hucks has done. On the other hand, they will be unjustly enriched at her expense if she is precluded from asserting her right to the insurance money, which she collected through mistake as an asset of the estate. She ought not be estopped from asserting the truth and claiming what is rightfully hers under the assignment. 10 R.C.L. 697, 698; Ott v. Ott, 182 S.C. 135, 188 S.E. 789; Hubbard v. Beverly, 197 S.C. 476, 15 S.E.2d 740, 135 A.L.R. 1206. For like reason the doctrine of election of rights or remedies, which is but another branch of the law of estoppel, may not be invoked. Bigelow on Estoppel 6 ed. pp. 743-744. The doctrine of waiver, which involves the voluntary relinquishment of known rights, can have no possible application.

The judgment appealed from will accordingly be affirmed.