Charles B. SOLOMON, Avery Tucker, Martin Weston and Joseph B. Mohr, Appellants,

v.

UNITED STATES of America, Appellee.

No. 13953.

United States Court of Appeals Sixth Circuit.

April 4, 1960.

Max E. Klayman and George Stone, Detroit, Mich., for appellants.

Willis Ward, Asst. U. S. Atty., Detroit, Mich. (Fred W. Kaess, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before SIMONS, Senior Circuit Judge, and MILLER and CECIL, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellee, United States of America, filed this action in the District Court against Max Solomon, his son Charles B. Solomon, Steve J. Marth, Avery Tucker, Martin Weston, Joseph B. Mohr, Charles Terry, and Barry Steel Corporation. The

complaint alleged that in 1946 Tucker, Weston, Mohr and Terry, who were war veterans, conspired with Max Solomon and Charles B. Solomon, who were non-veterans, to obtain from the War Assets Administration surplus steel in violation of the Surplus Property Act of 1944. 58 Stat. 765, 50 U.S. Code Appendix, 1944 Edition, Sections 1611 through 1646. It also alleged that Marth, as an employee of the War Assets Administration, had aided and abetted them in accomplishing their purpose, and that Barry Steel Corporation received the benefits and the profits from the sale of the steel involved. While the action was pending Max Solomon died and the Barry Steel Corporation underwent reorganization and the Government's claim against them was dismissed. At the close of the Government's evidence the District Judge directed verdicts in favor of the defendants Terry and Marth. At the conclusion of the trial the jury returned verdicts against the remaining four defendants, upon which verdicts judgments were entered, followed by this appeal.

Section 26(b) of the Surplus Property Act of 1944, Section 1635(b), Title 50, App., U. S. Code, 1944 Edition, provides as follows:

"(b) Every person who shall use or engage in or cause to be used or engaged in any fraudulent trick, scheme, or device, for the purpose of securing or obtaining, or aiding to secure or obtain, for any person any payment, property, or other benefits from the United States or any Government agency in connection with the disposition of property under this Act (such sections); or who enters into an agreement, combination, or conspiracy to do any of the foregoing—

"(1) shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit; or

"(2) shall, if the United States shall so elect, pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by such person to the United States or any Government agency; or

"(3) shall, if the United States shall so elect, restore to the United States the property thus secured and obtained and the United States shall retain as liquidated damages any consideration given to the United States or any Government agency for such property."

In the present case the Government elected to claim damages under Section 26(b) (2).

The following brief review of the Government's evidence is sufficient to show the facts upon which the Government relies and to present the issues involved on this appeal. Appellants Tucker, Mohr and Weston were honorably discharged veterans who qualified for a priority status under the Disposal Program. Max Solomon and Charles Solomon, who were non-veterans, were in the business of purchasing steel under the partnership name of Barry Products, which partnership was later incorporated under the name of Barry Steel Products, Inc. They were not entitled to a priority status. Each of these veterans made written application to the War Assets Administration for the purchase of steel under their priority status. The applications were typed in the office of Max and Charles Solomon by the secretary for the Solomons. The information for these applications was furnished by the Solomons. The Solomons paid to each veteran the amount of money which the veteran had agreed to pay for the steel. Each veteran, after receiving this money from the Solomons, paid for the steel by his own check. The Solomons received no note or security for the payment of this money to the veterans. The price paid for the purchase of steel under these applications was,

Tucker ............$13,873.73
Weston ............ 31,286.34
Mohr ............ 25,951.96

No one of the veterans was in the steel business, nor did any veteran have any warehouse facilities. The applications contained false statements with respect to the steel business in which each applicant stated he was engaged. At least in the cases of Tucker and Weston, the veterans did not see or inspect the steel so purchased. The veterans had nothing to do with the shipping instructions and the steel so purchased was shipped direct to the Solomons or according to Solomon's instructions. The veterans did not engage in the steel business after making the purchases involved in this action.

It is admitted by the Government that the veterans were legally entitled to a priority status in the purchase of the steel in question and after purchasing it had a right to resell it instead of using it. It is contended, however, that the purchases in the present case were not purchases by the veterans, but actually were purchases by the Solomons through fraudulent use of the priority rights of the veterans.

Evidence was introduced on behalf of the appellants that the purchases by them were bona fide transactions, that the steel so purchased was resold by them to the Solomons before they paid for it, and that the money transferred to them by the Solomons before they paid for their purchases were advance payments by the Solomons to the veterans on account of the resale of the steel and not payments by the Solomons to the Government.

The question presented by the evidence was whether the veteran involved in each transaction under consideration conspired with the Solomons to engage in a fraudulent scheme or device for the purpose of enabling the Solomons to obtain surplus steel from the Government on a priority basis, when as a matter of law under the Surplus Property Act they, being non-veterans, were not entitled to such a priority basis.

Appellants' first contention is that the evidence was not sufficient to take the case to the jury on this issue and that the Court erred in not sustaining the motions for directed verdicts in favor of each of the defendants, instead of in favor of only Terry and Marth.

■ Although the Government's evidence was contradicted in some respects, it is well settled that upon a motion of a defendant for a directed verdict, the trial judge should overrule the motion unless, viewing the evidence in the light most favorable to the plaintiff, there would be no substantial evidence to support a jury verdict if returned for him. Hinton v. Dixie Ohio Exp. Co., 6 Cir., 188 F.2d 121, 124; Scott v. United States, 6 Cir., 161 F.2d 1009, 1012.

■ Applying the rule to the evidence in the present case, we are of the opinion the District Judge properly overruled appellants' motions for directed verdicts.

Various other questions have also been raised by the appellants, which will be considered in turn.

The complaint, which was filed May 7, 1954, alleges that the appellants committed the acts complained of in March and April, 1946. Appellants contend that the action was barred by Section 2462, Title 28 U.S.C., which provides that an action "for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." The action was not brought until more than eight years after the alleged cause of action accrued. In United States v. Witherspoon, 6 Cir., 211 F.2d 858, this Court held that an action under Section 26(b) (1) of the Surplus Property Act of 1944 was an action for penalties to which Section 2462, Title 28 U.S.C., was applicable. However, the Supreme Court in Rex Trailer Co. v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149, later ruled that such an action was a civil remedy in the nature of liquidated damages and was not a criminal penalty. Based upon this ruling, the Court of Appeals for the Third Circuit and the Supreme Court held in United States v. Doman, 3 Cir., 255 F.2d 865, affirmed sub nom. Koller v. United States, 359 U.S. 309, 79 S.Ct. 755, 3 L.Ed.2d 828,

that a suit for damages under Section 26(b) (1) of the Surplus Property Act of 1944, was not a suit to enforce a fine or penalty and therefore was not subject to the five-year limitation of Section 2462, Title 28 U.S.C. See also: United States v. Weaver, 5 Cir., 207 F.2d 796, 798.

■ Appellants attempt to avoid the effect of this ruling by pointing out that the ruling involved an action brought under Section 26(b) (1) of the Act and is not applicable to the present action which was brought under Section 26(b) (2) of the Act. They contend that the reasoning of this Court's opinion in United States v. Witherspoon, supra, 6 Cir., 211 F.2d 858, is very much in point when this Court is now called upon to construe Section 26(b) (2) of the Act, which is materially different from Section 26(b) (1) and which has not yet been construed by any reported federal case. We find no merit in the claimed distinction between the two sections. In Rex Trailer Co. v. United States, supra, 350 U.S. 148, at pages 151–152, 76 S.Ct. at page 221, the Supreme Court said with respect to the three alternative remedies provided by Section 26(b), subsections 1, 2 and 3, "All three were recognized as civil remedies by Congress before the bill was passed, and the conclusion is inescapable that each was of the same nature and designed to serve the same purpose."

■■ The Surplus Property Act of 1944 was for the most part repealed by the Federal Property and Administrative Services Act of 1949. Sections 471–514, Title 40 U.S.C.A. Section 26 of the 1944 Act, under which the present action was brought in 1954, was one of the sections so repealed. In doing so, the 1949 Act substantially reenacted, with some change in wording, the civil remedies previously provided by Section 26 of the 1944 Act. Section 489, Title 40 U.S.C.A. We are met by appellants' contention that the rights and remedies provided by Section 26 of the 1944 Act were cancelled and extinguished by the repealing Act of 1949, which was enacted prior to the filing of the present action. This con-

tention fails to consider the general savings statute, now carried as Section 109, Title 1 U.S.C. Under the provisions of that section, Section 26 of the 1944 Act is treated as remaining in force for the purpose of sustaining a proper action for the enforcement of any liability thereunder. De La Rama Steamship Co. v. United States, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422; Allen v. Grand Central Aircraft Co., 347 U.S. 535, 553–555, 74 S.Ct. 745, 98 L.Ed. 933; United States v. Weaver, D.C.N.D.Ala., 107 F.Supp. 963, 964, reversed on other grounds 5 Cir., 207 F.2d 796.

One of the defendants named in this action was Steven J. Marth who, during 1945 and 1946 was employed by the Reconstruction Finance Corporation and the War Assets Administration. At the close of the government case, the District Judge sustained a motion for a directed verdict in favor of this defendant and he was dismissed from the case. Appellants contend that under the 1944 Act the conspiracy must relate to the "disposition" of government property; that under the 1949 Act the conspiracy could relate to the "procurement, transfer, or disposition" of government property; that giving effect to the broader scope of the 1949 Act, the word "disposition" under the 1944 Act should be construed as being restricted to the relinquishment of title or possession by the one who owns or possesses it; that giving such a construction to the word "disposition" in the 1944 Act makes it necessary that a government agent be involved in the alleged conspiracy; and that upon the dismissal from the case of the government agent Marth there was no conspiracy on the part of the other defendants as required by the 1944 Act.

■■ This point was not raised by counsel for appellant during the trial, due to the fact that in instructing the jury the District Judge inadvertently used the wording of the 1949 Act, which inadvertence was apparently also indulged in by counsel for the appellants. Under the instruction given, the point would not have been well taken. No ob-

jection was taken to that portion of the instruction, and any error in giving it is not subject to review at this time. Rule 51, Rules of Civil Procedure, 28 U.S.C. The point was first raised in appellants' motion for a new trial, after it was discovered by counsel that the instruction had been based upon the 1949 Act, instead of upon the 1944 Act. If, as a matter of law under the 1944 Act, there existed no cause of action against the appellants following the dismissal from the case of the government agent, the point was properly raised by the motion for a new trial and will be considered on this review. Lilly v. Grand Trunk Western Railroad Co., 317 U.S. 481, 488–489, 63 S.Ct. 347, 87 L.Ed. 411; Federal Deposit Insurance Corp. v. Vest, 6 Cir., 122 F.2d 765, 768, certiorari denied 314 U.S. 696, 62 S.Ct. 414, 86 L.Ed. 557; Di Giovanni v. Di Giovannantonio, 98 U.S.App.D.C. 147, 233 F.2d 26, 28.

█ We are of the opinion that appellants' argument misconstrues the nature of the action. The statute is directed at a conspiracy "for the purpose of securing or obtaining * * * for any person any * * * property, or other benefits from the United States or any Government agency *in connection with* the disposition of property under this Act;". (Emphasis added.) The illegal conspiracy was not one to *dispose* of government property. It was a conspiracy to *obtain* government property *in connection with* its disposition by the Government under the Act. The Government was disposing of its surplus personal property, notwithstanding the fact that one of its employees was not engaged in the conspiracy. The complaint charged each of three veteran appellants with conspiring with appellant Charles Solomon to acquire certain surplus government property which was being sold by the War Assets Administration, a governmental agency, at Detroit, Michigan, between March 4 and May 30, 1946, inclusive. We find nothing in the statute which requires the conspiracy to be with a government agent or employee. The District Judge properly overruled the motion for a new trial based on this question of law.

█ This action sought damages under option 2 of Section 26(b) of the 1944 Act, which provides that "Every person who * * * enters into an agreement, combination, or conspiracy" to engage in any fraudulent trick or device for the purpose of obtaining property from any Government agency in connection with the disposition of property under the Act, shall "pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by such person to the United States or any Government agency." Appellants contend that in the case of each veteran, judgment could not go against both the veteran and Solomon because *either* the veteran was the "person" who agreed to give the consideration *or* Solomon was the "person", but both the veteran and Solomon were not "such person" as defined in the Act. This ignores the basic concept of a conspiracy in which the act of any one of the conspirators is legally the act of each of them. McCandless v. Furlaud, 296 U.S. 140, 165, 56 S.Ct. 41, 80 L.Ed. 121; Standard Oil Co. of California v. Moore, 9 Cir., 251 F.2d 188, 211, certiorari denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148. Appellants' further contention that since the consideration has been paid the amount so paid should be credited against the liquidated damages of "twice the consideration agreed to be given" finds no support in the language of the statute, and is accordingly rejected.

█ In 1947 the Government through its Office of Price Administration filed complaints against appellants Weston and Tucker claiming overcharges in the sale of steel by them to Barry Steel Products. This was the same steel involved in the present action. The claims were settled by payments of small amounts by Weston and Tucker. Appellants claim that these O.P.A. suits were based on the contention that Weston and Tucker were the owners of the steel and that Barry Steel Products had purchased it from them, which position is incon-

sistent with the Government's contention in the present case that the steel was not purchased or owned by these appellants, but was in fact purchased from the Government agency by the Solomons. Appellants contend that the filing and prosecution of the O.P.A. cases constituted an election by the Government which is binding upon it and bars the prosecution of the present action arising out of the same facts. Election of remedies is a well recognized principle of law, but, in order to be applicable, certain facts must exist, one of which is that there must be a choice, knowingly made, between two inconsistent rights, either of which may be asserted at the will of the chooser. If, through a mistake of material fact or of law, alternative remedies are not known to be available, the selection of what later develops to be an improper remedy does not constitute an election which will bar the party from later asserting the correct remedy which is available to him. Goldstein v. United States, 8 Cir., 227 F.2d 1, 4; Cook v. Commercial Casualty Ins. Co., 4 Cir., 160 F.2d 490, 493. See: William W. Bierce, Ltd. v. Hutchins, 205 U.S. 340, 346–347, 27 S.Ct. 524, 51 L.Ed. 828; Crosley Corp. v. United States, 6 Cir., 229 F.2d 376, 378–379; Bernstein v. United States, 10 Cir., 256 F.2d 697, 705–706. The filing of the O.P.A. suits under the circumstances then existing did not constitute an election of remedies by the Government which would bar its later prosecution of the present action.

The jury, under instructions by the Court, found separate verdicts against each of the four appellants as follows: Tucker—$27,747.46; Mohr—$51,903.92; Weston—$62,572.68; Solomon—$142,224.06. These amounts were in the case of each veteran twice the amount of the consideration passing from the purchaser to the government agency. Thereafter, the Court entered judgments as follows: $27,747.46 jointly and severally against Tucker and Solomon; $51,903.92 jointly and severally against Mohr and Solomon; and $62,572.68 jointly and severally against Weston and Solomon.

Appellants contend that the Court erred in instructing the jury to return separate verdicts, in that conspirators, if liable, are liable jointly and severally, but not separately. They also contend that after separate verdicts were returned the Court was without authority to enter joint and several judgments and that such action was a substantive alteration of the jury's verdict. We believe these contentions are unsound.

 It is well settled that the liability of conspirators is a joint and several liability. Lewis v. Ingram, 10 Cir., 57 F.2d 463, 465–466; International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 9 Cir., 189 F.2d 177, 190, affirmed 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275; Commodity Credit Corp. v. Transit Grain Co., D.C.S.D.Tex., 157 F.Supp. 527, 536. But the separate verdicts were not inconsistent with this principle of law. Under Rule 49(a), Rules of Civil Procedure, the trial judge is authorized to submit to the jury special findings of fact which might properly be made under the pleadings and evidence, together with such explanation and instructions concerning the matter as may be necessary to enable the jury to make its findings upon each issue. The separate verdicts in this case are merely factual findings. They do not constitute the law of the case. The trial judge has the responsibility of applying appropriate legal principles to the facts found by the jury. Thedorf v. Lipsey, 7 Cir., 237 F.2d 190, 193; Continental Casualty Co. v. Little, 5 Cir., 152 F.2d 728, 729.

 In the present case, the verdict as to each veteran was a special finding of liability on his part and the amount of the damage charged to him. Under the theory of the complaint and the instructions of the Court, such liability did not exist against the individual veteran unless he conspired with Solomon, and liability against the veteran necessarily included liability in the same amount against Solomon. Although the verdicts were separate they plainly showed that the jury found that each

676

veteran conspired with Solomon in that it also found Solomon liable and fixed his total liability in the exact amount of the total of the liabilities of the three veterans. We find no error in having the jury, under appropriate instructions dealing with the alleged conspiracies, return separate verdicts of liability, if they found liability to exist, and the amount thereof with respect to the individual defendants. The manner in which those factual findings are used in formulating and entering the final judgment is a question of law for the Court.

The trial judge was accordingly authorized to enter an appropriate judgment based upon these findings and the legal principles applicable thereto. Since as a matter of law the liability of conspirators is joint and several, and not separate, the joint and several judgments were properly entered. If a separate judgment had been entered on each separate verdict, the total liability under the judgments would have been $284,448.12. The total liability under the judgments as entered was only $142,224.06. No appellant was prejudiced thereby. Rule 61, Rules of Civil Procedure.

We have carefully considered appellants' complaint about the Court's instructions to the jury with respect to the question of a conspiracy and the liability or non-liability of the appellant Solomon by reason thereof. The instruction which defined a conspiracy, though brief, was adequate and correct. We are of the opinion that considering the instructions as a whole the Court made it clear to the jury that liability on the part of the appellant Solomon did not exist in the absence of liability on the part of the particular veteran appellant with whom it was charged he conspired, and that the question of damages with respect to the liability of each appellant was correctly presented. Other objections were not made to the Court's charge at the time it was given and our review is accordingly so limited. Rule 51, Rules of Civil Procedure.

The judgments are affirmed.